SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Augustine W. Badiali v. New Jersey Manufacturer's Insurance Group (A-48-12) (071931)**

**Argued September 9, 2014 -- Decided February 18, 2015**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether an insurer's rejection of an arbitration award in an uninsured motorist (UM) claim was "fairly debatable," thereby barring an insured from recovering counsel fees and other consequential damages under a theory of bad faith.

In August 2006, plaintiff Augustine W. Badiali was injured when his car was rear-ended by an uninsured motorist. Plaintiff was insured for UM coverage under his personal policy with defendant, New Jersey Manufacturer's Insurance Group (NJM), as well as his employer's policy with Harleysville Insurance Company. Plaintiff filed a UM claim, which proceeded to arbitration and resulted in an award of $29,148.62 in plaintiff's favor. Since NJM and Harleysville were contractually and statutorily obligated to share this award equally, they each owed $14,574.31. Harleysville paid its half, but NJM rejected the award and demanded a trial de novo. NJM asserted that the language of its personal policy allowed either party to dispute an arbitration award in which the total amount exceeded $15,000.

The trial court affirmed the award, finding NJM liable for $14,574.31. In an unpublished decision, the Appellate Division affirmed, relying on its holding in D'Antonio v. State Farm Mut. Auto. Ins. Co., 262 N.J. Super. 247, 249-50 (App. Div. 1993), an underinsured motorist (UIM) action, in which it found that the question of whether a case is of sufficient magnitude to justify a trial rests on the extent of the carrier's liability, rather than that of the tortfeasor. NJM subsequently paid the award in full.

In March 2011, plaintiff commenced a second action against NJM, asserting claims for breach of contract, bad faith, and consumer fraud. NJM moved for summary judgment, relying on a 2004 unpublished Appellate Division decision, which held, under essentially the same circumstances, that the insurer (also NJM) was entitled to reject the arbitration award at issue and demand a trial de novo. Geiger v. N.J. Mfrs. Ins. Co., No. A-5135-02 (App. Div. Mar. 22, 2004). NJM conceded that Geiger lacked precedential authority, but maintained that its existence proved that NJM's conduct was reasonable, fair, and honest, and that it had "fairly debatable" reasons to reject the arbitration award at issue and seek a trial de novo.

The trial court granted summary judgment in favor of NJM on all counts, although discovery had not been completed. Plaintiff appealed, and the Appellate Division affirmed. Declining to address whether it was improper for the trial court to grant summary judgment prior to the completion of discovery, the panel held that, as a matter of law, the mere existence of unpublished case law supporting NJM's rejection of the arbitration award precluded a finding of bad faith against NJM, regardless of whether NJM relied on or was aware of that unpublished case. Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 (App. Div. 2012). This Court granted plaintiff's petition for certification. 213 N.J. 387 (2013).

**HELD:** NJM's rejection of the arbitration award in plaintiff's UM action was "fairly debatable," thereby barring plaintiff from recovering counsel fees and other consequential damages under a theory of bad faith.

1. Contracts impose an implied obligation of good faith and fair dealing in their performance and enforcement. Among the business practices that the New Jersey Legislature considers unfair or deceptive in the context of insurance claims settlements is failure "to negotiate in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.J.S.A. 17:29B-4(9)(f). An insurer's breach of good faith may be found upon a showing that it has breached its fiduciary obligations, including its duty to settle claims. Whether an insurer has acted in bad faith by breaching its fiduciary duty depends on the circumstances of the

1

particular case. In order to establish a bad faith claim for denial of benefits in New Jersey, a plaintiff must show that no debatable reasons existed for the denial. (pp. 10-12)

2. Summary judgment is granted where there is no genuine issue of material fact, such that the moving party is entitled to a judgment as a matter of law. Purely legal questions, such as the interpretation of insurance contracts, are particularly suited for summary judgment. New Jersey's public policy favors arbitration as a means of settling disputes that otherwise would be litigated in a court. In the area of insurance claims settlement, arbitration is often used to expedite resolution of UM claims, with the duty to arbitrate and the scope of the arbitration dependent on the provisions of the parties' agreement. Although this Court has consistently upheld an insurer's right to reject an arbitration award pursuant to the express terms and conditions of its policy language, our appellate courts have limited attempts to reject an award and proceed de novo where the policy wording is ambiguous. For example, in D'Antonio, supra, 262 N.J. Super. at 249, a UIM case, the Appellate Division rejected a plaintiff's attempt to seek a new trial on damages where the phrase "amount of damages" was ambiguous. The panel noted that it is the extent of the carrier's UIM liability that should determine whether the case is of sufficient magnitude to justify a trial. (pp. 12-17)

3. In deciding whether NJM had "fairly debatable" reasons for rejecting the arbitration award, the Court first considers whether the existence of the unpublished Geiger decision reasonably supports NJM's position. There, the Appellate Division permitted NJM to move to reject the arbitration award and request a trial de novo based on the total amount of the arbitration award ($27,000), rather than NJM's share ($13,500), and the policy provision allowing either party to dispute an arbitration award in which the total amount exceeded $15,000. In accordance with Rule 1:36-3, Geiger has no legal precedential value. However, in the limited in-house, business context of this case, the Court finds that the mere existence of this unpublished opinion allows NJM to avoid a finding of bad faith for actions take in accordance with its holding. It is illogical to suggest that NJM, or any corporation, cannot rely on previous unpublished opinions - especially those in which they were involved - in making business decisions. Thus, having pursued a similar course of action in Geiger with the approval of the Appellate Division, NJM had fair reason to believe that it was making a legitimate legal and business decision by rejecting the arbitration award and seeking trial. Rule 1:36-3 is inapplicable in this context, where NJM referenced Geiger not for its legal precedential value, but rather to prove that NJM acted in good faith. Under the circumstances here, the existence of the unpublished Geiger decision precludes a finding of bad faith against NJM. (pp. 17-21)

4. Even without reliance on Geiger, the language of NJM's policy provided a rational, valid reason for NJM to seek a trial by jury on the disputed claim. Giving the policy terms their plain, ordinary meaning, the $29,148.62 arbitration award was clearly in excess of the policy's $15,000 threshold, notwithstanding the fact that NJM only needed to contribute $14,574.31. NJM's position was, at the very least, fairly debatable based on a reasonable and principled reading of the applicable policy language. Moreover, plaintiff's reliance on D'Antonio, a UIM case, is misplaced. Special rules exist for the calculation of UIM benefits, requiring exhaustion of all available coverages and the offsetting of any recoveries received as a precondition to payment. Consequently, in D'Antonio, the amount of the carrier's liability was less than the total award since the plaintiff had settled with the tortfeasor for a portion of the total award. Conversely, here, the disposition of plaintiff's UM claim was not influenced or reduced by the tortfeasor's own liability insurance limits. Thus, it was reasonable for NJM to conclude that D'Antonio applied only in the UIM setting. However, the Court holds that, going forward, any reference in a policy of insurance to the statutory $15,000 policy limit as the basis for rejecting an arbitration award applies only to the amount that the insurance company is required to pay, and not to the total amount of the award. To hold otherwise would frustrate the legislative intent of expediting resolution of smaller cases in the least costly manner, easing congestion in our courts, and limiting jury trials to larger cases. (pp. 21-25)

5. In light of its disposition of the bad faith cause of action in this matter, the Court declines to address the entitlement of an insured to attorney's fees in the uninsured/underinsured context. The Court also declines to address the issue of discovery, which it deems irrelevant to the instant case.

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER, JUSTICES ALBIN and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICES LaVECCHIA and PATTERSON did not participate.**

2

AUGUSTINE W. BADIALI,

      Plaintiff-Appellant,

          v.

NEW JERSEY MANUFACTURERS
INSURANCE GROUP,

      Defendant-Respondent.


        Argued September 9, 2014 – Decided February 18, 2015

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 429 N.J. Super. 121 (2012).

        Richard J. Hollawell argued the cause for
        appellant (Console & Hollawell, attorneys).

        Richard J. Williams, Jr. argued the cause
        for respondent (McElroy, Deutsch, Mulvaney &
        Carpenter, attorneys; Mr. Williams and
        Joseph G. Fuoco, on the briefs).

        Amos Gern argued the cause for amicus curiae
        New Jersey Association for Justice (Starr,
        Gern, Davison & Rubin, attorneys; John J.
        Ratkowitz, on the brief).

        Carl A. Salisbury argued the cause for
        amicus curiae United Policyholders
        (Kilpatrick Townsend & Stockton, attorneys).

      JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

      The issue this Court must decide on appeal is whether an

insurer's rejection of an arbitration award in an uninsured

motorist (UM) claim was "fairly debatable," thereby barring an

insured from recovering counsel fees and other consequential damages under a theory of bad faith.

Plaintiff, Augustine W. Badiali, was injured when his motor vehicle was rear-ended by an uninsured motorist. Plaintiff filed a UM claim, which proceeded to arbitration and resulted in an award in plaintiff's favor. Plaintiff filed suit against his insurer, defendant New Jersey Manufacturers Insurance Group ("NJM"), after NJM rejected the arbitration award and refused to pay its share. The trial court confirmed the arbitration award in a summary action and found NJM liable for its share of the award. In a subsequent action, plaintiff asserted that NJM litigated in bad faith by advocating that its policy language allowed for a rejection of the arbitration award at issue. The trial court granted summary judgment in favor of NJM. The court agreed that the case was ripe for summary judgment although discovery had not been completed. The court was further persuaded that NJM's position was "fairly debatable" based on its policy language and on the existence of an unpublished Appellate Division decision involving nearly identical facts, in which NJM was also a party.

The Appellate Division affirmed, holding that NJM's position was "fairly debatable" under Pickett v. Lloyd's, 131 N.J. 457 (1993), because it was supported by a prior,

2

unpublished opinion of the court.  Plaintiff was thereby barred from recovering counsel fees or any other consequential damages.

For the reasons set forth in this opinion, we affirm the judgment of the Appellate Division.

I.

On August 1, 2006, plaintiff was injured when his motor vehicle was rear-ended by an uninsured motorist.  Plaintiff was insured for UM coverage under his personal policy with defendant, NJM, and also under his employer's insurance carrier, Harleysville Insurance Company ("Harleysville").  Plaintiff filed a UM claim, which proceeded to arbitration and resulted in an award of $29,148.62 in plaintiff's favor.  NJM and Harleysville were contractually and statutorily obligated to share this award equally.  See N.J.S.A. 17:28-1.1(c).  Harleysville paid its half, $14,574.31.  However NJM rejected the award and demanded a trial de novo.  NJM asserted that the language of its personal auto policy allowed either party to dispute an arbitration award in which the total amount exceeded $15,000.  Plaintiff filed suit against NJM to enforce the award.

In a summary action pursuant to N.J.S.A. 2A:24-7, on April 16, 2010, the trial court confirmed the arbitration award and found NJM liable for $14,574.31, notwithstanding the fact that the total arbitration award was in excess of the $15,000 threshold provided for in its personal auto policy as grounds to

3

reject the award.  The Appellate Division in an unpublished opinion affirmed (Badiali I), relying on its holding in D'Antonio v. State Farm Mut. Auto. Ins. Co., 262 N.J. Super. 247, 249-50 (App. Div. 1993), that "'the extent of the carrier's [underinsured motorist] liability . . . not the tortfeasor's liability . . . should determine whether the case is of sufficient magnitude to justify a trial.'"  NJM thereafter paid the arbitration award in full.

On March 29, 2011, plaintiff commenced a second action against NJM, asserting claims for breach of contract, bad faith, and consumer fraud.  Regarding bad faith, plaintiff argued that NJM expended more than $28,000 to avoid paying its portion of the arbitration award in Badiali I.  Plaintiff further asserted that NJM caused him to incur substantial expense, years of delay, and undue aggravation as a result of its handling of his UM claim, which entitled him to treble and punitive damages, as well as attorney's fees and costs.

NJM moved for summary judgment, maintaining that there was no genuine issue of material fact whether its actions in Badiali I constitutes bad faith.  In arguing that it did not act in bad faith, NJM relied on a 2004 unpublished decision in which the Appellate Division held, under essentially the same circumstances, that the insurer (also NJM) was entitled to reject the arbitration award at issue and demand a trial de

4

novo.  Geiger v. N.J. Mfrs. Ins. Co., No. A-5135-02 (App. Div. Mar. 22, 2004)[1].  Although NJM conceded that Geiger lacked any precedential authority, it asserted that its mere existence proved that NJM's conduct was reasonable, fair, and honest, and that it had "fairly debatable" reasons to reject the arbitration award at issue and seek a trial de novo as a result.  Put differently, NJM maintained that its position and reasoning in rejecting the arbitration award in Badiali I were identical to its position and reasoning in rejecting the arbitration award in Geiger.  Thus, because the Appellate Division expressly vindicated that position and reasoning in Geiger, NJM asserted that it would be inconsistent and illogical to find that they acted in bad faith under nearly identical circumstances in Badiali I.

The trial court heard oral argument on January 20, 2012, and subsequently granted summary judgment in favor of NJM on all counts, despite the fact that discovery had not yet been completed.  The trial court found that plaintiff failed to demonstrate how further discovery would supply the missing elements of his cause of action, or change the material facts or outcome of his case.  As such, the court deemed the case ripe for summary judgment.

---

[1] We cite but do not rely on this unpublished opinion for reasons explained in Section VI below.  See R. 1:36-3.

Plaintiff appealed and the Appellate Division affirmed. Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121 (App. Div. 2012) [hereinafter "Badiali II"]. The panel held that, as a matter of law, the mere existence of unpublished case law supporting NJM's rejection of the arbitration award precluded a finding of bad faith against NJM, regardless of whether NJM relied on or was aware of that unpublished case. Id. at 126. The Appellate Division declined, however, to address whether it was improper for the trial court to grant summary judgment prior to the completion of discovery. The panel found "it does not matter whether NJM actually based its position in Badiali I on [Geiger], it also does not matter that plaintiff was deprived of the opportunity to explore the formulation of NJM's strategy in the prior suit in pretrial discovery in this suit." Id. at n.5.

This Court granted plaintiff's petition for certification. Badiali v. N.J. Mfrs. Ins. Grp., 213 N.J. 387 (2013). Thereafter the Court granted leave to appear as amici curiae to New Jersey Association for Justice ("NJAJ") and to United Policyholders ("United").

II.

Plaintiff asserts three arguments. Plaintiff first argues that the trial and appellate courts erroneously concluded that NJM had "fairly debatable" reasons to reject the arbitration award at issue, based upon the existence of the unpublished

6

<u>Geiger</u> opinion. Plaintiff contends that NJM failed to establish that it actually relied on <u>Geiger</u> at the time it rejected the arbitration award at issue, and that NJM's decision was contrary to other published legal authority in <u>D'Antonio</u>, which was binding on plaintiff.

Plaintiff additionally argues that the appellate court erroneously upheld the trial court's grant of summary judgment when discovery had not yet been completed. He contends that when certain facts are solely within the knowledge of the moving party, such as the information relied upon by an insurer when making its decisions, it is especially inappropriate to grant summary judgment without allowing the completion of all scheduled depositions or requested written discovery.

Finally, plaintiff contends that he is statutorily entitled to all counsel fees incurred while seeking to enforce the benefits of the policy and arbitration award to which he was entitled. <u>R.</u> 4:42-9(a)(6).

NJM, on the other hand, argues that the trial and appellate courts properly found that NJM acted in good faith as a matter of law. NJM contends that its reasons for rejecting the arbitration award and demanding a jury trial were based on a sound, reasonable, and legally supportable interpretation of its policy language. In addition to its policy language, NJM also contends that it had "fairly debatable" reasons to reject the

arbitration award based on the existence of <u>Geiger</u>, which although unpublished, was issued prior to the underlying matter and fully supported the position taken by NJM in <u>Badiali I</u>. NJM asserts that it was aware of <u>Geiger</u> at all times and disputes plaintiff's argument that NJM's failure to cite <u>Geiger</u> during the initial litigation evidenced a lack of awareness as to its essential holding.

Furthermore, NJM disputes plaintiff's contention that summary judgment may not be granted until discovery is complete. Rather, NJM contends that discovery need not be taken if it will not patently change the outcome of the case. On this issue, NJM further argues that the underlying case is particularly suited for disposition on summary judgment because the underlying dispute deals with the interpretation of an arbitration clause, which is an issue of law.

NJM's final argument is that plaintiff is not entitled to attorney's fees because <u>Rule</u> 4:42-9(a)(6) does not apply to first-party insurers providing uninsured/underinsured coverage and, even if it did, plaintiff is unable to receive attorney's fees because it's conduct was reasonable and not instituted in bad faith.

NJAJ, appearing as amicus curiae, supports the arguments advanced by plaintiff. NJAJ contends that a lack of procedural guidance exists regarding the preservation of first-party bad

faith claims. This, NJAJ maintains, has resulted in such claims being disposed of on the merits in what amounts to a "post-verdict motion for summary judgment." NJAJ asserts that, in analyzing allegations of first-party bad faith, courts should be required to engage in a more exhaustive examination of claims-handling practices. This includes reviewing the actual conduct of the defendant insurance carrier with respect to the investigation, evaluation, and processing of a plaintiff's claim, as well as the information actually considered at the point in time that a decision was made. Noting the prevailing judicial attitude that presumes reasonableness on the part of the insurer against other evidence to the contrary, NJAJ thus urges this Court to depart from its rigid adherence to Pickett's "fairly debatable" approach so as to allow for a determination of bad faith where an insurer acts intentionally or recklessly in a manner contrary to its role as fiduciary.

Furthermore, NJAJ joins plaintiff in asserting that summary judgment was premature and inappropriate, as discovery had not yet been completed. NJAJ also joins plaintiff in arguing for the applicability of counsel fees, providing two additional theories for awarding such fees in first-party bad faith claims. First, NJAJ contends that since first-party bad faith causes of action sound primarily in contract, all compensatory, punitive, and other foreseeable damages should be available as

9

consequential damages for breach of contract.  NJAJ also suggests that plaintiff be awarded attorney's fees based on the prohibition of frivolous litigation.  N.J.S.A. 2A:15-59.1.

United, appearing as amicus curiae, also supports the arguments advanced by plaintiff.  United contends that the Appellate Division's decision in Badiali II improperly insulates and protects insurance carriers from bad faith causes of action, even where such carriers act with subjective malice in handling claims.  United stresses the need for guidance and uniform standards to be applied in judging whether an insurer has handled a claim in bad faith.

### III.

All contracts impose an implied obligation of good faith and fair dealing in their performance and enforcement.  Sears Mortg. Corp. v. Rose, 134 N.J. 326, 347 (1993); Pickett, supra, 131 N.J. at 467.  The New Jersey Legislature has attempted to codify these principles, particularly in the insurance industry, by defining what is considered to be unfair or deceptive business practices in the area of insurance claims settlement. See N.J.S.A. 17:29B-4(9).  Such practices include:  "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information[,]" N.J.S.A. 17:29B-4(9)(d); "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been

10

completed[,]" N.J.S.A. 17:29B-4(9)(e); "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds[,]" N.J.S.A. 17:29B-4(9)(g); and, finally, "[n]ot attempting to negotiate in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[,]" N.J.S.A. 17:29B-4(9)(f) (emphasis added).

Good faith is generally defined as "honesty in fact in the conduct or transaction concerned." N.J.S.A. 12A:1-201(19). The good faith obligations of an insurer to its insured run deeper than those in a typical commercial contract. Unlike with a typical commercial contract, in which "[p]roof of bad motive or intention" is vital to an action for breach of good faith, Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assocs., 182 N.J. 210, 225 (2005) (internal quotations omitted), an insurer's breach of good faith may be found upon a showing that it has breached its fiduciary obligations, regardless of any malice or will, see Bowers v. Camden Fire Ins. Ass'n, 51 N.J. 62, 79 (1968).

One inherent fiduciary obligation of every insurer is the duty to settle claims. See Lieberman v. Empl'rs Ins. of Wausau, 84 N.J. 325, 336 (1980). Whether an insurer has acted in bad faith and thereby breached its fiduciary obligation in

11

connection with the settlement of claims "must depend upon the circumstances of the particular case." Am. Home Assurance Co. v. Hermann's Warehouse Corp., 117 N.J. 1, 7 (1989) (internal quotations omitted).

A finding of bad faith against an insurer in denying an insurance claim cannot be established through simple negligence. Pickett, supra, 131 N.J. at 481. Moreover, mere failure to settle a debatable claim does not constitute bad faith. Id. at 473 (citing Chester v. State Farm Ins. Co., 789 P.2d 534, 537 (Idaho Ct. App. 1990)). Rather, to establish a first-party bad faith claim for denial of benefits in New Jersey, a plaintiff must show "that no debatable reasons existed for denial of the benefits." Id. at 481.

Under the salutary "fairly debatable" standard enunciated in Pickett, "a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim." Id. at 473 (citing Chester, supra, 789 P.2d at 537).

IV.

A trial court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact challenged and that

12

the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to "'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" See Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div.) (quoting Auster v. Kinoian, 153 N.J. Super. 52, 56 (App. Div. 1997), certif. denied, 177 N.J. 493 (2003)).

In considering whether there exists a genuine issue of material fact, the motion judge "must consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Purely legal questions, such as the interpretation of insurance contracts, are questions of law particularly suited for summary judgment. See Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 210 N.J. 597, 605 (2012).

V.

The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in

13

a court.  Cty. Coll. of Morris Staff v. Cty. Coll. of Morris Staff Ass'n, 100 N.J. 383, 390 (1985).  Indeed, in the area of insurance claims settlement, "the use of arbitration to expedite resolution of UM claims is widespread and UM coverage provisions in automobile liability policies characteristically authorize arbitration of disputes at the option of either party."  United Servs. Auto. Ass'n v. Turck, 156 N.J. 480, 485 (1998).  The scope of the arbitration is dependent solely on the provisions and conditions mutually agreed upon in the parties' agreement.  In re Arbitration Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 229 (1979).  Stated another way,

> the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement. The parties may shape their arbitration in any form they choose and may include whatever provisions they wish to limit its scope. The parties have the right to stand upon the precise terms of their contract; the court may not rewrite the contract to broaden the scope of arbitration or otherwise make it more effective. It is also significant that, although the legislature has mandated binding arbitration of PIP claims at the option of the insured (N.J.S.A. 39:6A-5c) and has required non-binding arbitration of certain automobile tort claims (N.J.S.A. 39:6A-31), it has not required arbitration of UM claims at all. Thus the ascertainable public policy here is to encourage resort to arbitration while preserving full flexibility to the parties to elect or reject, and to structure and limit, that process as they choose.
>
> [Turck, supra, 156 N.J. at 486 (quoting Cohen v. Allstate Ins. Co., 231 N.J. Super. 97, 100-01 (App.

14

Div. 1989) (internal citations omitted), <u>certif.</u> <u>denied</u>, 117 <u>N.J.</u> 39 (1989)).]

This Court has consistently upheld an insurer's right to reject an arbitration award pursuant to the express terms and conditions articulated in its policy language. <u>See, e.g.</u>, <u>Rutgers Cas. Ins. Co. v. Vassas</u>, 139 <u>N.J.</u> 163, 175 (1995) (affirming insurer's right to reject arbitration award because insured had failed to make an underinsured motorist (UIM) claim until after the statute of limitations on the underlying tort action had run).

However, where an arbitration clause or the wording of a policy is ambiguous, our appellate courts have limited attempts to reject an arbitration award and proceed de novo. <u>See, e.g.</u>, <u>Derfuss v. N.J. Mfrs. Ins. Co.</u>, 285 <u>N.J. Super.</u> 125, 130 (App. Div. 1995) (limiting UIM insurer's request for trial de novo to damages only because its policy language created ambiguity that cast doubt as to whether parties also intended liability to be an issue). Specifically, in a case central to plaintiff's argument, <u>D'Antonio</u>, <u>supra</u>, 262 <u>N.J. Super.</u> at 249, the Appellate Division rejected a UIM plaintiff's attempt to seek a new trial on damages where the phrase "amount of damages" was ambiguous.

In <u>D'Antonio</u>, the plaintiff was injured when an underinsured motorist struck her vehicle. The plaintiff settled

15

with the other driver for the maximum of that driver's liability policy, $25,000. Id. at 248. Thereafter, the plaintiff brought a claim against her own insurance carrier for UIM coverage. Ibid. In arbitration, she was awarded $40,000 in damages. Ibid. After offsetting the $25,000 recovery received from the underinsured motorist, the portion owed by the plaintiff's insurer was only $15,000. Id. at 249. The plaintiff subsequently filed a demand for a trial de novo, arguing that, based on the policy's arbitration provision, she was entitled to a jury trial because the "amount of damages" exceeded $15,000, the statutory minimum limit imposed by N.J.S.A. 17:28-1.1a. The insurer opposed the plaintiff's demand for a trial de novo, arguing that the amount of the insurer's liability did not exceed $15,000 and, thus, the award was binding. Id. at 249. Interpreting the policy language, the Appellate Division found that the term "amount of damages" was ambiguous. Ibid. The Appellate Division therefore focused its inquiry on the intent of the parties, which it determined was "to permit a post-arbitration trial only in cases of a certain magnitude, i.e., only where the 'amount of damages' fixed by the arbitrators exceeds $15,000." Ibid. The panel reasoned further that,

> the arbitration is conducted to determine the carrier's liability for UIM payments. If a trial is available, it too will determine only the carrier's UIM obligation. It follows that the extent of the carrier's UIM liability --

16

> not the tortfeasor's liability -- should determine whether the case is of sufficient magnitude to justify a trial. The parties' purpose in foreclosing trials in modest cases would be substantially frustrated if the right to demand a trial turned on the damages attributable to the underinsured tortfeasor.
>
> [Id. at 249-50.]

The Appellate Division thus held that the plaintiff was not entitled to reject the award.

## VI.

Having discussed the legal framework for this appeal, we now turn to the facts of this case and consider whether NJM had "fairly debatable" reasons for rejecting the arbitration award in Badiali I.

## A.

NJM maintains that its reasoning for rejecting the arbitration award in Badiali I was "fairly debatable" under Pickett, supra, 131 N.J. 457, because it was supported by a prior, unpublished opinion of the Appellate Division, see Geiger, supra. In Geiger, the plaintiff was injured when his automobile collided with an uninsured motorist. Plaintiff filed an arbitration proceeding against NJM for UM coverage. The arbitration resulted in an award in favor of plaintiff for $27,000. The award was shared equally between NJM and another insurer. Thus, NJM's share of the liability was $13,500 -- an amount less than the $15,000 statutory minimum limit for

17

liability imposed by N.J.S.A. 17:28-1.1a. Nevertheless, NJM filed a motion to reject the award and to request a trial de novo, arguing that the total "arbitration award" was greater than $15,000. NJM relied upon the terms and conditions of its policy's arbitration provision, which provided: "If the arbitration award exceeds [the minimum limit for liability, $15,000,] either party may demand the right to a trial by jury on all issues." NJM's arbitration provision was the same in Badiali I as it was in Geiger. Thus, NJM contends that it had a perfectly adequate basis for rejecting the arbitration award in Badiali I, as such action was previously sanctioned by the Appellate Division in Geiger.

NJM argues for de facto reliance on Geiger based on the simple premise that litigants are presumed to know the outcome of cases in which they are a party. We recognize NJAJ's suggestion that Pickett's "fairly debatable" standard should include at least some focus on the individual investigation and valuation performed by the claims handler responsible for the case, however, we express reservation about the potential discovery complications associated with such an approach and thus do not adopt such an approach at this time. We do not find it necessary here to alter the salutary test set forth by the Pickett Court, as the issue before us does not require such action. Rather, the important consideration in this case is

18

whether the existence of the unpublished <u>Geiger</u> decision serves as a reasonable basis to support the position taken by NJM in the instant case.

In accordance with the well-established jurisprudence and court rules of this State, <u>Geiger</u> has no legal precedential value due to its unpublished nature. The use and authority of unpublished opinions is governed by <u>Rule</u> 1:36-3. That rule provides:

> No unpublished opinion shall constitute precedent or be binding upon any court. Except for appellate opinions not approved for publication that have been reported in an authorized administrative law reporter, and except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court. No unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all contrary unpublished opinions known to counsel.
>
> [<u>R.</u> 1:36-3.]

This rule has been affirmed time and again by this Court. <u>See</u> <u>Guido v. Duane Morris LLP</u>, 202 <u>N.J.</u> 79, 91 n.4 (2010); <u>Mount Holly Twp. Bd. of Educ. v. Mount Holly Twp. Educ. Ass'n</u>, 199 <u>N.J.</u> 319, 332 n.2 (2009); <u>In re Alleged Improper Practice</u>, 194 <u>N.J.</u> 314, 330 n.10 <u>cert. denied</u>, 555 U.S. 1069, 129 <u>S. Ct.</u> 754, 172 <u>L. Ed.</u> 2d 726 (2008).

Still, this Court has never considered whether the mere existence of an unpublished opinion will allow a party to avoid a finding of bad faith for actions taken in accordance with its holding. In the context of the case before us, we find that it does; however we limit our holding to the in-house, business context present here. In our view, it is illogical to suggest that NJM, or any corporation, cannot rely on previous unpublished opinions -- especially those in which they were specifically involved -- in forming their business decisions. Having pursued a similar course of action in Geiger with the approval and endorsement of the Appellate Division, we find it was reasonable for NJM to maintain that same position, under nearly identical facts, in rejecting the arbitration award in the instant litigation. To clarify, NJM had adequate reason to believe that its conduct was consistent with judicially accepted contract interpretation, corporate policies and practices. Thus, we find the existence of the Geiger opinion establishes that NJM had, at the very least, fair reason to believe that it was making a legitimate legal and business decision by rejecting the arbitration award in Badiali I and seeking trial.

As such, we find that NJM's citation to the Appellate Division's unpublished decision in Geiger before this Court was acceptable because it was referenced not for its legal precedential value, but rather to prove that NJM acted in good

20

faith in conducting its business as an insurance claims handler. We accordingly find that Rule 1:36-3 is inapplicable to this matter and expressly hold that the existence of the unpublished Geiger decision precludes a finding of bad faith against NJM.

B.

Even without reliance on Geiger, we find that NJM is able to show fairly debatable reasons based on both a reasonable interpretation of its policy language, and the fact that the case here, a UM action, is distinguishable from D'Antonio, a UIM case.

As a threshold matter, the language of the policy itself provided a rational, and indeed valid, reason to seek a trial by jury on the disputed claim. The NJM policy states:

> A decision agreed to by two of the arbitrators will be binding unless the arbitration award exceeds the minimum limit [$15,000] for liability specified by the Financial Responsibility Law of New Jersey. If the arbitration award exceeds that limit, either party may demand the right to a trial by jury on all issues.

[Emphasis added.]

The terms of the NJM policy must be given their plain, ordinary meaning. Turck, supra, 156 N.J. at 486. The arbitration award in this case was $29,148.62, clearly in excess of the policy's $15,000 threshold, notwithstanding the fact that NJM needed only to contribute half of that amount, $14,574.31. Therefore, NJM

21

had reason to believe that the policy language gave it the right to reject the arbitration award and demand a jury trial. In our view, NJM's position was thus, at the very least, fairly debatable and based on a reasonable and principled reading of the applicable policy language.

Although plaintiff relies heavily on D'Antonio to support its position, we find that case distinguishable and inapplicable here. First and foremost, D'Antonio involved a UIM case rather than a UM case, as present here. The differences between these insurance coverages are significant. UM coverage is mandatory first-party coverage insuring the policy holder, and others, against the possibility of injury or property damage caused by the negligent operation of a motor vehicle by an individual without liability insurance coverage. See N.J.S.A. 17:28-1.4. UM coverage exists to compensate victims injured by an "uninsured motor vehicle." See N.J.S.A. 17:28-1.1e(2). UM insurance extends protection to the injured victim. Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 498 (1987). One of the stated purposes of UM coverage is "to provide maximum remedial protection to the innocent victims of financially irresponsible motorists[.]" Id. at 504. UM coverage is designed to "fill gaps in compulsory insurance plans." Id. at 499 (citations omitted).

22

UIM coverage, by contrast, is optional first-party coverage insuring the policy holder, and others, against the possibility of injury or property damage caused by the negligent operation of a motor vehicle whose liability insurance coverage is insufficient to pay for all losses suffered. See French v. N.J. Sch. Bd. Ass'n Ins. Grp., 149 N.J. 478 (1997). UIM coverage is defined by N.J.S.A. 17:28-1.1(e)(1), as

> insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.

The most important distinguishing characteristics of UIM insurance are the special rules for calculating UIM benefits. These rules require exhaustion of all available coverages and the offsetting of any recoveries received as a precondition to payment. Vassas, supra, 139 N.J. at 171-72 (citing Longworth v. Van Houten, 223 N.J. Super. 174 (App. Div. 1988)).

In D'Antonio, supra, the Appellate Division held that, in the context of a UIM arbitration, it is the extent of the UIM

23

carrier's liability determined by the arbitrators, rather than the total tortfeasor liability, that should be measured against the $15,000 minimum liability limit to determine the right to demand a trial de novo. 262 N.J. Super. at 249-50. The plaintiff in that case had settled with the tortfeasor for $25,000, and the insurance carrier therefore received the benefit of a $25,000 credit. The arbitration award of a gross sum of $40,000, then, translated to UIM damages of $15,000. Thus, "the amount of damages" within the meaning of the UIM arbitration provision, was $15,000, not the $40,000 gross damages. The UIM arbitration provision in the insurance policy gave either party the right to request a trial de novo only if the "amount of damages" exceeded the statutory minimum limit for liability. Because the UIM exposure there did not exceed that limit, the Appellate Division affirmed the trial judge's denial of the plaintiff's request for a trial. Conversely, here, the disposition of plaintiff's UM claim was not influenced or reduced by a tortfeasor's own liability insurance limits. Thus, it was not unreasonable for NJM to conclude that D'Antonio applied only in the UIM setting and not to UM arbitration.

We hold that NJM's position in rejecting the award was at least fairly debatable and based on a reasonable and principled reading of its policy language. In light of this holding, we

24

find that reliance on Geiger is not necessary because NJM's policy language gave rise to the same result.

However, we now hold that any reference in a policy of insurance to the statutory $15,000 policy limit as the basis for rejecting an arbitration award applies only to the amount that the insurance company is required to pay, not to the total amount of the award. To allow the total amount of the award to be the determining factor for rejecting an arbitration award, even though the insurance company's share is less than the statutory policy limit, would frustrate the legislative intent of expediting resolution of smaller cases in the least costly manner, easing the congestion in our courts, and limiting jury trials to the larger cases.

C.

In light of our disposition of the bad faith cause of action in this matter, we see no present need to address the entitlement of an insured to attorney's fees in the uninsured/underinsured context. We further decline to address the issue of discovery, as we find such issue irrelevant to the instant case.

For the reasons stated herein, we affirm the judgment of the Appellate Division.

CHIEF JUSTICE RABNER; JUSTICES ALBIN and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICES LaVECCHIA and PATTERSON did not participate.

25

SUPREME COURT OF NEW JERSEY

NO. __A-48___                              SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


AUGUSTINE W. BADIALI,

      Plaintiff-Appellant,

         v.

NEW JERSEY MANUFACTURERS
INSURANCE GROUP,

      Defendant-Respondent.


DECIDED _____February 18, 2015_____
       Chief Justice Rabner        PRESIDING

OPINION BY _____Justice Fernandez-Vina_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | --------------------- | --------------------- |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | --------------------- | --------------------- |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |

1