**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4197-19

DONNA AZZOLINA,

    Plaintiff-Appellant,

v.

JOHN AZZOLINA,

    Defendant-Respondent.

_____

Argued July 27, 2021 – Decided August 24, 2021

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1715-14.

Michael Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

Gary E. Fox argued the cause for respondent (Fox & Melofchik, LLC, attorneys; Gary E. Fox, on the brief).

PER CURIAM

In this matrimonial matter, plaintiff, Donna Azzolina, appeals from a July 20, 2020 Family Part order denying her motion to declare void a June 18, 2020 Appellate Award rendered by a private appellate arbitrator and denying her request for a renewed equitable distribution assessment. We affirm.

I.

The following facts are derived from the record. The parties married in 1995. Both parties had been married before, divorced, and had children from their prior relationships. They had one child together born in 1997. Prior to their marriage, plaintiff worked as a bookkeeper, in sales, and in customer relations. After the child's birth, plaintiff primarily raised the child while defendant, John Azzolina, worked in the family business, which was comprised of eight business entities, including a liquor store in Sea Girt.

On March 15, 2013, plaintiff filed a complaint for divorce, which was dismissed or withdrawn. She filed another complaint for divorce on May 12, 2014. Following extensive motion practice, discovery, and court appearances, the parties executed an arbitration agreement (the agreement) in August 2017 in light of their concerns about potential issues under Sheridan v. Sheridan, 247 N.J. Super. 552, 563 (Ch. Div. 1990). The agreement provided that the parties agreed to resolve their disputes pursuant to the New Jersey Alternate Procedure

for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -30. Specifically, the parties agreed to submit all of their issues to binding arbitration, including the determination of alimony and equitable distribution. The agreement provided for discovery, including depositions. They agreed the "umpire,"[1] a mutually selected retired Family Part judge, "has the jurisdiction after the issuance of any Award in order to be able to reconsider the Award based upon any factor set forth in R[ule] 4:49-2 or R[ule] 4:50-1 of the Rules of Court."

In addition, the parties agreed "to permit an appeal of the final Award to a panel of one or more private Appellate Umpires to be agreed upon by the parties or provided by a third[-]party, such as the American Arbitration Association." Further, the parties agreed "that the standard of review shall be that as applied by the Appellate Division of the Superior Court of New Jersey." The agreement provided for a post-award review, modification, or correction of the award if the initial arbitrator erred in applying the substantive law of the State of New Jersey or miscalculated figures. The parties ultimately selected a retired appellate judge of this State to serve as the appellate arbitrator in the

---

[1] We refer to the umpire as the initial arbitrator in this decision.

event of an appeal. The decision of the appellate arbitrator was "final and binding."

On December 10, 2018, the initial arbitrator issued an amended decision and award,[2] which included an award of alimony to plaintiff. Of significance, under prior law in December 2018, alimony was still deductible by the payor spouse (here defendant) from his gross income by the federal government and includible as income by the payee spouse (here plaintiff). However, the Tax Cuts and Jobs Act of 2017 was enacted by Congress and became effective January 1, 2019. Pub. L. No. 115-97, 131 Stat. 2054 (codified in various sections of 26 U.S.C.A.) (the Act). The tax treatment of alimony was changed by the Act—alimony would no longer be tax deductible to defendant or includable as income to plaintiff, a salient factor in the initial arbitrator's decision. See id. at § 11051, 131 Stat. 2054, 2089-90. Therefore, it was crucial that the parties be divorced by December 31, 2018, otherwise the alimony amount would have to be recalculated.

Consequently, the parties agreed to finalize the divorce on or before December 31, 2018, preserve the right to file motions for reconsideration or modification with the initial arbitrator, and file an appeal to the appellate

---

[2] The initial award is not included in the appendices.

A-4197-19

arbitrator if warranted. A final judgment of divorce (FJOD) was entered on December 20, 2018, by the presiding judge of the Family Part. The FJOD also incorporated a simultaneously entered consent order confirming the December 10, 2018 "(Amended) Decision of Arbitrator"[3] pursuant to R[ule] 5:3-8. In addition, the consent order provided:

> 2. The time periods set forth in [p]aragraphs 27, 28, 29, and 30 of the [agreement] to seek review, modification or correction of the [a]ward by the [initial arbitrator] is extended to February 1, 2019.
>
> 3. The time period set forth in [p]aragraph 32 of the [a]greement to seek modification by the [c]ourt is extended to commence on the date of any modification or correction of the [a]ward by the [initial arbitrator].
>
> 4. The time period set forth in [p]aragraph 35 of the [a]greement to appeal the [a]ward is extended to commence running on the date of any final decision by the [initial arbitrator] after review, modification or correction of the [a]ward.

In connection with the entry of the FJOD, both parties were questioned about the judgment and the incorporated Amended Decision of Arbitrator. Under oath, both parties, represented by counsel, confirmed that: (1) they had freely and knowingly entered into the arbitration agreement; (2) the December 10, 2018 Amended Decision of Arbitrator was being confirmed and incorporated

---

[3] The record does not reflect why the initial arbitrator's decision was "amended."

into the FJOD; and (3) the consent order allowed the parties to return to the initial arbitrator and appellate arbitrator, if necessary.

In that regard, plaintiff testified:

> [Plaintiff's Counsel]: And you signed a very comprehensive arbitration agreement, correct?
>
> [Plaintiff]: Yes. Yes.
>
> [Plaintiff's Counsel]: And we hired [j]udge . . . , a retired judge, to arbitrate the case?
>
> [Plaintiff]: Yes.
>
> [Plaintiff's Counsel]: And indeed, we did appear many days. You were placed under oath as was Mr. Azzolina as were other witnesses, correct?
>
> [Plaintiff]: Yes.
>
> [Plaintiff's Counsel]: Testimony was given and exhibits were provided, correct?
>
> [Plaintiff]: Yes.
>
> [Plaintiff's Counsel]: And after that, and during those proceedings, I was present as your attorney?
>
> [Plaintiff]: Yes.
>
> [Plaintiff's Counsel]: And I argued on your behalf, presented exhibits on your behalf, conducted examination on your behalf, correct?
>
> [Plaintiff]: Yes.

A-4197-19

[Plaintiff's Counsel]:   And Mr. Fox did similar services for John Azzolina, correct?

[Plaintiff]:  Yes.

[Plaintiff's Counsel]:   And then at the end of the testimony after a period of time, [j]udge . . . issued what he called his arbitration decision, correct?

[Plaintiff]:  Yes.

[Plaintiff's Counsel]:   And then he also provided us with a document set forth as an arbitration award?

[Plaintiff]:  Yes.

[Plaintiff's Counsel]:   Now, you understand when you signed that agreement to go off to arbitration, that that vested full authority in [j]udge . . . to make his decision?

[Plaintiff]:  Yes.

[Plaintiff's Counsel]:   And that his decision is now about to be confirmed, and I explained to you what that means, correct?

[Plaintiff]:  Yes.

[Plaintiff's Counsel]:   In a moment, if Her Honor, as she most likely will, signs the consent order that Mr. Fox and I have consented to, that order from [j]udge . . . will now be a binding order of the [S]uperior [C]ourt.  You understand that?

[Plaintiff]:  Yes.

7

Based upon the testimony of both parties, the presiding judge found that they entered into the arbitration agreement knowingly and voluntarily and sought confirmation of the arbitration award. The presiding judge then entered the FJOD, which incorporated the December 10, 2018 Amended Decision of Arbitrator and executed the consent order. In doing so, the presiding judge stated on the record that "the parties do in fact agree that they will go back to [the initial arbitrator] and if necessary [the appellate arbitrator] in order to review any issues that they may have with the arbitration award and that they've agreed to extend time to do so in that consent order." No appeal was ever taken from the FJOD or challenging the terms of the consent order.

On January 10, 2019, defendant filed a motion for reconsideration and for modification with the initial arbitrator regarding equitable distribution of the stock in Sea Girt Wine & Spirits and Highland Traders, alimony, and in a subsequently filed amended motion, emancipation of the parties' child. Plaintiff filed a cross-motion seeking to increase her equitable distribution award and challenging defendant's right to challenge the amended decision of arbitrator.

On December 4, 2019, the initial arbitrator issued an arbitration order denying the parties' motion and cross-motion seeking modification of his amended decision of arbitrator and granted defendant's motion for emancipation

8

of the parties' child.  In his decision, the initial arbitrator noted, "if either or both parties are seeking to appeal this matter, and based upon the prior arrangement reached in good faith by counsel and the spirit of same, the parties shall have an additional [thirty] days from the date of this order (December 4, 2019) to file any applicable appeals accordingly."

On January 2, 2020, defendant filed a notice of appeal to the appellate arbitrator.  Plaintiff opposed the procedure but nonetheless filed opposition and presented oral argument before the appellate arbitrator.  On June 18, 2020, the appellate arbitrator issued an Appellate Award granting defendant's appeal, in part, on the issue of equitable distribution.  In her decision, the appellate arbitrator reversed the award of stock to plaintiff as to Sea Girt Wine and Spirits, Inc.

On July 24, 2020, plaintiff filed a notice of motion for relief pursuant to N.J.S.A. 2A:23A-13 and Rule 5:3-8 before the Family Part motion judge seeking to void the June 18, 2020 Appellate Award rendered by the appellate arbitrator and affirm the FJOD, contending the private arbitrators lacked jurisdiction to alter or amend the FJOD.  Defendant opposed the motion.  Both parties waived oral argument.

On July 20, 2020, the motion judge issued an order and comprehensive written statement of reasons denying plaintiff's motion to void the June 18, 2020 Appellate Award rendered by the private appellate arbitrator. The motion judge also granted plaintiff's request to affirm the existence of the FJOD and denied her application challenging the authority of the private arbitrators to alter or amend the FJOD. The motion judge specifically rejected plaintiff's argument that the entry of the FJOD terminated the litigation, thereby depriving the Appellate Arbitrator of jurisdiction to hear post-judgment disputes.

In his decision, the motion judge found:

> First, in the [a]greement, the parties agreed that "[n]either party shall have the right or power to expand, narrow, amend or revoke this [a]greement without the consent in writing of the other party." Although that provision does not expressly direct that the parties may, by consent, agree to expand, narrow, amend, or revoke the [a]greement, such is a necessary, implicit corollary. Indeed, such is referred to in [p]aragraph 29 as well, which notes the limited jurisdiction of the arbitration, "absent written consent of the parties to expand the scope of the proceeding"—again an implicit indication that the parties may, by consent, modify the arbitration.
>
> Moreover, if the [a]greement were not subject to consensual expansion, narrowing, amendment, or revocation, the parties could have said such. Instead, the foregoing language is merely a directive that any endeavor to expand, narrow, amend, or revoke the agreement must be consensual and bilateral—not unilateral.

10

The [a]greement also provided for a post-award review, modification, or correction of the award by the selected arbitrator, as well as submission to a selected appellate umpire. Paragraph 35 provides that, "[i]f an appeal is filed, the [a]ward shall not be deemed final for purposes of confirmation pending the appeal," but that the decision of the appellate umpire "shall be final and binding."

Thereafter, the parties entered into the [c]onsent [o]rder—signed by [p]residing [j]udge . . . and incorporated into the FJOD. Importantly, the [c]onsent [o]rder and FJOD were entered on the same day.

The [c]onsent [o]rder expands the time frames for post-award review, modification, or correction of the [a]ward, as well as expanding the time for an appeal to the appellate umpire.

[Plaintiff] contends that the FJOD must be final and that upon entry of the FJOD retired [j]udge . . . and retired [j]udge . . . lack jurisdiction to arbitrate the proceedings. That contention inherently requires fixation on [p]aragraph 35 of the [a]greement.

N.J.S.A. 2A:23A-18 provides that "[u]pon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree. There shall be no further appeal or review of the judgment or decree." That provision, however, refers to review by the Appellate Division—not an arbitration appellate umpire, such as [r]etired [j]udge . . . .

11

The motion judge concluded the consent order "was an amendment to the [a]greement" and that "supplementary arbitration is not foreign . . . ." Further, the motion judge highlighted that plaintiff's "post-FJOD conduct" undermined her position regarding the finality of the FJOD, noting plaintiff filed a cross-motion with the appellate arbitration. This appeal followed.

On appeal, plaintiff raises two points: (1) the motion judge erred in denying her motion to declare void the private appellate arbitration decision purporting to invalidate part of the FJOD; and (2) the motion judge erred in denying her motion for alternative relief of a renewed equitable distribution determination given the appellate arbitrator's decision removing a major asset from the marital estate.

Based upon our careful review of the record, we disagree and affirm substantially for the reasons expressed by the motion judge. We add the following brief remarks.

## II.

"The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015). This "strong public policy" also favors "using arbitration in family litigation[.]" Minkowitz v. Israeli, 433 N.J. Super. 111,

131-32 (App. Div. 2013).  However, "[a]rbitration can attain its goal of providing final, speedy[,] and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, meant to be a substitute for and not a springboard for litigation."  Fawzy v. Fawzy, 199 N.J 456, 468 (2009) (quoting Barcon Assocs. Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 187 (1981).  To that end, "[a]rbitration should spell litigation's conclusion, rather than its beginning."  Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (alteration in original) (citing N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 292 (2007)).

Thus, "courts grant arbitration awards considerable deference," ibid., and "when binding arbitration is contracted for by litigants, the judiciary's role to determine the substantive matters subject to arbitration ends."  Minkowitz, 433 N.J. Super. at 134.

> From the judiciary's perspective, once parties contract for binding arbitration, all that remains is the possible need to: enforce orders or subpoena issued by the arbitrator, which have been ignored, N.J.S.A. 2A:23B-17(g); confirm the arbitration award, N.J.S.A. 2A:23B-22; correct or modify an award, N.J.S.A. 2A:23B-24, and in very limited circumstances, vacate an award[,] N.J.S.A. 2A:23B-23.  If not for this limitation on judicial intervention of arbitration awards, "the purpose of the arbitration contract . . . would be severely undermined."

[Ibid. (quoting Fawzy, 199 N.J. at 470).]

Here, the motion judge properly determined that the consent order conferred post-judgment jurisdiction of the parties' future disputes upon the initial arbitrator and appellate arbitrator, if warranted. Plaintiff waived her right to contest the Appellate Award. We have previously explained that

> [t]he principle of waiver is invoked to assure that a party may not get two bites of the apple: if he chooses to submit to the authority and jurisdiction of an arbitrator, he [or she] may not disavow that forum upon the return of an unfavorable award. That important policy would be subverted if a party could enter a nominal objection to the arbitrator's jurisdiction, submit himself fully to the arbitration and still retain the option to demand a new hearing if he does not like the outcome of the arbitration. Reservation of an objection to the arbitration surely is a relevant fact in determining waiver. But that fact alone cannot be dispositive.
>
> [Highgate Dev. Corp. v. Kirsh, 224 N.J. Super. 328, 333 (App. Div. 1988).]

Our Court approved the Highgate approach in Wein, and provided further guidance to trial courts deciding whether a party who has participated in an arbitration has waived the right to later object to an arbitration award. Wein v. Morris, 194 N.J. 364, 383 (2008). The Court explained that

> the court should consider the totality of circumstances to evaluate whether a party has waived the right to object to arbitration after the matter has been ordered

14

to arbitration and arbitration is held. Some of the factors to be considered in determining the waiver issue are whether the party sought to enjoin arbitration or sought interlocutory review, whether the party challenged the jurisdiction of the arbitrator in the arbitration proceeding, and whether the party included a claim or cross-claim in the arbitration proceeding that was fully adjudicated.

[Id. at 383-84.]

In concluding that the defendants in Wein had waived their right to contest the order compelling arbitration, the Court noted that

it would be a great waste of judicial resources to permit defendants, after fully participating in the arbitration proceeding, to essentially have a second run of the case before a trial court. That would be contrary to a primary objective of arbitration to achieve final disposition, in a speedy, inexpensive, expeditious and perhaps less formal manner.

[Id. at 384-85.]

Here, plaintiff never appealed the FJOD or consent order. Moreover, her failure to do so is compelling, particularly in light of the fact that she filed a cross-motion before the initial arbitrator post-judgment and filed opposition and presented oral argument before the appellate arbitrator. The consequence of that failure is that the parties have expended time and money arbitrating the case pre- and post-judgment. Considering those circumstances, we have no difficulty concluding that plaintiff waived her right to contest the consent order

15

compelling post-judgment arbitration. And, our courts have long held that a consent order is not appealable. Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207 (App. Div. 2009) (citing Winberry v. Salisbury, 5 N.J. 240, 255 (1950)). Equally unavailing is plaintiff's argument that the FJOD divested the arbitrators of post-judgment motion jurisdiction—the record unequivocally supports the conclusion that the parties knowingly, willingly, and voluntarily agreed to this procedure as evidenced by the consent order incorporated into the FJOD.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4197-19