57 A.3d 37

AUGUSTINE W. BADIALI, PLAINTIFF–APPELLANT, v. NEW JERSEY MANUFACTURERS INSURANCE GROUP, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 10, 2012—Decided November 28, 2012.

Before Judges FISHER, ALVAREZ and WAUGH.

*Richard J. Hollawell* argued the cause for appellant (*Console & Hollawell*, attorneys; *Mr. Hollawell*, on the brief).

*Joseph G. Fuoco* argued the cause for respondent (*McElroy, Deutsch, Mulvaney & Carpenter*, attorneys; *Richard J. Williams, Jr.*, of counsel; *Mr. Fuoco*, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In a prior appeal, we considered whether defendant New Jersey Manufacturers Insurance Group (NJM), an uninsured motorist (UM) insurer—barred by its policy from rejecting an arbitration award under $15,000—was entitled to reject a $29,148.62 award when only liable to pay half. In adhering to *D'Antonio v. State Farm Mut. Auto. Ins. Co.*, 262 *N.J.Super.* 247, 620 *A.*2d 1060

(App.Div.1993), which considered the same situation in an underinsured motorist (UIM) setting, we concluded that the insurer was bound to the award and, therefore, affirmed a judgment that precluded NJM's demand for a trial de novo. *Badiali v. N.J. Manufacturers Ins. Co.*, No. A–4870–09T2, 2011 *WL* 677275 (App. Div. Feb. 28, 2011) (*Badiali I* ).

*Badiali I* did not end the controversy. On March 29, 2011, plaintiff filed another complaint against NJM, asserting various legal theories in pursuing damages, mainly counsel fees incurred in pursuit of the judgment obtained in *Badiali I*. NJM successfully moved for summary judgment, leading to this appeal in which plaintiff argues: he was wrongfully denied discovery into how NJM formed its position in the earlier suit; the judge erred in concluding, as a matter of law, that NJM's position in *Badiali I* was fairly debatable; and questions of fact precluded summary judgment. We agree that absent a conclusive and precedential determination by this court or the Supreme Court, NJM's position was fairly debatable—a holding that bars plaintiff's recovery of the counsel fees incurred in *Badiali I* or this case, or any other consequential damages.

I

In *Badiali I*, we considered the following undisputed facts and circumstances:

Plaintiff, who was injured as the result of the negligence of an uninsured driver, had UM coverage from policies issued by both Harleysville Insurance Company and [NJM]. An arbitration resulted in an award of $29,148.62 in plaintiff's favor. Harleysville paid its half; NJM rejected the award and demanded a trial.

Consequently, plaintiff commenced this suit, claiming that NJM's responsibility was less than $15,000, because NJM was only obligated to pay half of the $29,148.62 award, and that NJM was precluded from demanding a trial regardless of the size of the award. Chiefly relying upon our decision in *D'Antonio*, the trial judge agreed with plaintiff's contention that the award was final because NJM was liable for less than $15,000 notwithstanding that the award was in excess of that amount.

[*Badiali I, supra,* slip op. at 2]

In its appeal in *Badiali I,* NJM argued the order under review was based on an erroneous interpretation of the critical portion of its policy, which focuses not on NJM's liability, but on the size of the arbitration award itself:

> [T]he arbitrators' [decision] will be binding *unless the arbitration award exceeds the minimum limit* for liability specified by the Financial Responsibility Law of New Jersey.[1]   If the arbitration award exceeds that limit, either party may demand the right to a trial by jury on all issues.
>
> [Emphasis added.]

NJM did not contest that its liability was limited to half the arbitration award because Harleysville also provided UM coverage, *See N.J.S.A.* 17:28–1.1(c), and acknowledged that its ultimate liability did not exceed $15,000, but claimed that "those circumstances [were] irrelevant" and insisted "the monetary threshold for fixing the finality of an arbitration award was exceeded because it is the amount of the award—not the extent of its liability—that matters." *Badiali I, supra,* slip op. at 3.

In rejecting NJM's argument in *Badiali I,* we explained why the principles outlined in *D'Antonio* were applicable:

> We considered a similar argument in *D'Antonio,* where plaintiff was injured in an automobile accident, settled with the tortfeasor for $25,000, which was the limit of the tortfeasor's insurance coverage, and then made a claim against her own insurer for UIM benefits.   262 *N.J.Super.* at 248 [620 *A.*2d 1060].   The arbitrators "found defendant '100% liable' and awarded plaintiff 'the gross sum of $40,000.' " *Ibid.* Because the parties agreed the award "contemplated that the $25,000 recovered from [the tortfeasor] was to be credited against the $40,000 'gross sum,' " *id.* at 249 [620 *A.*2d 1060], the insurer was ultimately liable for only $15,000 in UIM benefits—an amount which did not exceed the minimum for rejecting the award. As a result, we concluded that the insurer did not have the right to reject the award because its liability for UIM payments was determinative.   *Id.* at 250 [620 *A.*2d 1060].
>
> NJM argues that *D'Antonio* is distinguishable because it concerned a UIM arbitration award rather than a UM arbitration award and because the phrasing of the UIM policy provision in question there differs from the phrasing of the UM policy provision in question here.   Those circumstances are certainly true, but they do not prompt a different result here.

---

[1] The Financial Responsibility Law of New Jersey, mentioned in the policy, refers to *N.J.S.A.* 39:6A–3, which fixes the monetary threshold at $15,000.

In ascertaining the parties' intent in *D'Antonio,* we recognized that the UIM provision's phrase—"amount of damages"—was not defined by the policy and that "its meaning must be drawn from the setting in which it is used." *Id.* at 249 [620 A.2d 1060]. Reasoning that arbitration "is conducted to determine the carrier's liability for UIM payments," and "[i]f a trial is available, it too will determine only the carrier's UIM obligation," *ibid.,* Judge Gaulkin explained for this court

that the extent of the carrier's UIM liability—not the tort-feasor's liability—should determine whether the case is of sufficient magnitude to justify a trial. The parties' purpose in foreclosing trials in modest cases would be substantially frustrated if the right to demand a trial turned on the damages attributable to the underinsured tortfeasor.

[*Id.* at 249-50, 620 A.2d 1060.]

[*Badiali I, supra,* slip op. at 3–5]

Based on this understanding of *D'Antonio* and the similarity of the matter at hand, we held in *Badiali I:*

Even though the policy here utilized a different phrase in fixing the threshold for preserving a right to trial, the parties' purpose was unmistakably the same as in *D'Antonio,* and we can find no principled reason to adopt NJM's request for an alternative approach—based solely on minor differences in the policy language—to govern the same essential circumstances.

[*Badiali I, supra,* slip op. at 3–5]

Because *Badiali I* was not published, our prior decision did not carry precedential value. *R.* 1:36-3.

## II

With *Badiali I* providing the background, we turn to the crux of this appeal. Citing statutory [2] and common law [3] grounds, plaintiff chiefly argues that NJM failed to act in good faith when it refused to pay its share of the arbitration award and, instead, advocated an interpretation of the insurance policy that we ultimately rejected in *Badiali I* in further litigating this dispute. In

---

[2] The New Jersey Unfair Claims Settlement Practices Act, *N.J.S.A.* 17:29B–1 to –19, prohibits "unfair method[s] of competition or [ ] unfair or deceptive act[s] or practice[s] in the business of insurance." *N.J.S.A.* 17:29B–3. *N.J.S.A.* 17:29B–4(9)(f) defines those prohibitive acts as including an insurer's failure to "attempt[ ] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

[3] *See, e.g., Pickett v. Lloyd's,* 131 *N.J.* 457, 470, 621 A.2d 445 (1993) (recognizing "a cause of action for bad-faith failure to pay an insured's claim").

arguing here that it acted in good faith in *Badiali I*, NJM relies upon a 2004 unpublished decision in which another panel of this court held, in essentially the same circumstances, that *D'Antonio* was distinguishable and that the insurer (also NJM) was entitled to reject the arbitration award and demand a trial de novo. *Geiger v. N.J. Manufacturers Ins. Co.*, No. A–5135–02 (App.Div. Mar. 22, 2004).[4]

Interestingly, NJM offered no sworn statement or evidential material to suggest that it relied upon *Geiger* in refusing to pay its share of the arbitration award and in taking the position that culminated in our decision in *Badiali I*.[5] Notwithstanding its peculiar late appearance in the discourse, *Geiger*'s mere existence precludes a finding that NJM's position was either instituted or pursued in bad faith. That is, plaintiff cannot persuasively argue that NJM's position was posited or prosecuted in bad faith when that very position was endorsed by another panel of this court.

---

[4] We recognize that, as a general matter, unpublished opinions are not to be cited by any court absent certain specified circumstances. *See R.* 1:36–3 (declaring, in relevant part, that "except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court"). Notwithstanding, our citations to *Geiger* and *Badiali I* are appropriate not only to provide a full understanding of the issues presented but also because their citations herein meet the "any other similar principle of law" exception.

[5] The record, in fact, strongly suggests that NJM developed its strategy in refusing to pay its share of the arbitration award in *Badiali I* without being aware of *Geiger* because *Geiger* was not cited to the trial court until after entry of judgment in *Badiali I*. As conceded in its brief in this appeal, NJM's new counsel for the appeal in *Badiali I* (not NJM's current counsel), who also represented NJM in *Geiger*, brought *Geiger* to the attention of the trial judge when NJM sought a stay pending appeal in *Badiali I*. That would strongly suggest that NJM had refused to pay its share of the arbitration award and thereafter caused litigation over its right to a trial de novo without being conscious of *Geiger*. However, because we conclude that it does not matter whether NJM actually based its position in *Badiali I* on *Geiger*, it also does not matter that plaintiff was deprived of the opportunity to explore the formulation of NJM's strategy in the prior suit in pretrial discovery in this suit. Accordingly, we need not determine whether the judge erred in precluding discovery into that area or in ruling on the summary judgment motion before plaintiff obtained that discovery.

Accordingly, the trial judge properly entered summary judgment in NJM's favor.

## III

Because, if we did not do more, the dueling unpublished opinions in *Geiger* and *Badiali I* would allow insurers to continue to reject arbitration awards that result in liability less than $15,000 in similar circumstances, we have deemed it appropriate to iterate our holding in *Badiali I* as part of our published disposition of this appeal. *See R.* 1:36–2(a).

Affirmed.