**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5657-18T1
                 A-5658-18T1

SAL ELECTRIC COMPANY,
INC.,

      Plaintiff-Respondent,

v.

THE PIKE COMPANY, INC.,
WEGMANS FOOD MARKETS,
INC., THE FIDELITY AND
DEPOSIT COMPANY OF
MARYLAND,

      Defendants-Appellants.

_____

> Argued January 13, 2020 – Decided April 13, 2020
>
> Before Judges Messano, Vernoia and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1169-19, and Morris County, Docket No. L-0347-19.
>
> William L. Ryan argued the cause for appellants (Archer & Greiner, PC, attorneys; William L. Ryan, Daniel J. DeFiglio, and Amy E. Pearl, on the briefs).

Lee M. Tesser and Gina A. Makoujy argued the cause for respondent (Tesser & Cohen, attorneys; Lee M. Tesser and Gina A. Makoujy, on the briefs).

PER CURIAM

These appeals were argued back-to-back, and we consolidate them now in a single opinion because they involve the same parties and present common legal issues. Defendant, The Pike Company, Inc. (Pike), a New York general contractor, entered into contracts (the Prime Contracts) with Wegmans Food Markets, Inc. (Wegmans), to construct two supermarkets in Montvale and Hanover, New Jersey. Pike, in turn, executed a master subcontractor agreement (MSA) with plaintiff, SAL Electric Company, Inc. (SAL), to perform electrical work at both locations. Pike and SAL executed a "[w]ork [o]rder" for each location under the terms of the MSA.

The Prime Contract included a forum selection clause by which Pike and Wegmans "consent[ed], with respect to any litigation arising out of or related to [the Prime Contract], to the exclusive jurisdiction and venue of the Supreme Court, Monroe County, New York[,] or the United Federal District Court in Rochester, New York." Pike and Wegmans agreed to follow the dispute resolution procedures thereafter outlined in the Prime Contract prior to commencing any litigation.

The MSA contained no forum selection clause.  However, it required all disputes to be submitted first to mediation in Monroe County, New York, and, failing resolution, all disputes were to be "settled according to the disputes resolution procedures in the Prime Contract."

As we discuss more fully below, SAL claimed payments were due and owing under the MSA, and it eventually filed construction liens against both projects and complaints in two vicinages alleging, among other causes of action, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and claims under the Construction Lien Law (CLL), N.J.S.A. 2A:44A-1 to -38, and the Prompt Payment Act (PPA), N.J.S.A. 2A:30A-1 to -2. Representing all defendants,[1] Pike moved to dismiss the complaints, arguing the Law Division lacked subject matter jurisdiction because the forum selection clause in the Prime Contracts required any litigation be brought in New York state.  The two Law Division judges took different paths, but each denied Pike's motion.

In whole or in part, both judges relied upon N.J.S.A. 2A:30A-2(f), that provision of the PPA which states, "In any civil action brought to collect

---

[1]  The complaints also named Wegmans as a defendant, and The Fidelity and Deposit Company of Maryland, which issued a surety bond to Pike, as a defendant.

payments pursuant to this section, <u>the action shall be conducted inside of this State</u> and the prevailing party shall be awarded reasonable costs and attorney fees." (emphasis added). And, relying on a recently issued unpublished opinion of this court, both judges concluded that because N.J.S.A. 2A:30A-2(f) reflected the strong public policy of this state, the forum selection provision in the Prime Contracts violated that public policy and was unenforceable. We granted Pike's motions for leave to appeal.

I.

Relevant Provisions of the Prime Contracts and MSA

Article 13 of the Prime Contracts, entitled "General Provisions[,]" said:

> 13.1   GOVERNING LAW, JURISDICTION AND VENUE
>
> > 13.1.1   The Contract shall be governed by the internal laws of the State of New York. Each party hereto consents, with respect to any litigation arising out of or related to this Agreement, to the exclusive jurisdiction and venue of the Supreme Court, Monroe County, New York[,] or the United States Federal District Court in Rochester, New York.
> >
> > . . . .

A-5657-18T1

13.7   DISPUTES

> 13.7.1   If [Pike] disagrees with a determination of [Wegmans] or if, in the opinion of either party, the other party has failed to comply with the requirements of the Contract Documents, then the dispute resolution procedure set forth herein shall be invoked. Exhaustion of these procedures is a precondition to any lawsuit or other legal remedy by [Pike].

> 13.7.2   In order to expedite the prompt resolution of any disputes which may arise hereunder, the parties agree that the dispute resolution procedure set forth herein will be employed by both parties prior to either party availing itself of any legal remedies . . . against the other party.

The next five subsections described the dispute resolution procedure. Wegmans and Pike agreed to submit the dispute to each side's "First Level" representative, identified on a separate exhibit, and, failing agreement, either side could "escalat[e] the dispute to the 'Second Level' representatives[,]" again identified on a separate exhibit. In the event the dispute was not resolved at the Second Level, "then the determination of [Wegmans'] Second Level representative [was] conclusive, final and binding on the parties." Lastly, if Pike remained unsatisfied, it could "commence a lawsuit in one of the courts named in Paragraph 13.1.1 . . . it being understood that review by such court shall be

limited to the question of whether . . . the determination of [Wegmans'] Second Level representative [was] arbitrary, capricious or so grossly erroneous as to evidence bad faith."

Subsection 1.8.1 of the MSA between SAL and Pike listed the Prime Contract as one of the "Subcontract Documents[.]"[2] Article 11 of the MSA, entitled "DISPUTES RESOLUTION PROCESS[,]" provided:

> 11.1 Initial Dispute Resolution   If a dispute arises out of or relates to this [MSA] . . . , the parties shall endeavor to settle the dispute first through direct discussions between corporate officers . . . .   If the dispute cannot be resolved through direct discussions, the parties shall participate in mediation under the . . . Rules of the American Arbitration Association [(AAA)] before recourse to any other form of binding dispute resolution. The location of the mediation shall be Monroe County[,] New York.   Once a party files a request for mediation with the other . . . and with the [AAA], the parties agree to commence such mediation within thirty (30) calendar days . . . .   Either party may terminate the mediation at any time after the first

---

[2] SAL contended in the Law Division, and has reiterated the claim before us, that it was unaware of the terms of the Prime Contracts when it executed the MSA or the respective work orders.  On the record before us, we find no merit to the contention.  R. 2:11-3(e)(1)(E).  Pike and Wegmans entered into the Hanover Prime Contract in April 2016, and the Prime Contract for Montvale in September 2016.  Pike and SAL executed the MSA in May 2016, and the work order for the Hanover project the same day, and they executed the Montvale work order in October 2016.  The motion judges did not make any finding as to whether SAL's representative received and reviewed the terms of the Prime Contract for Hanover before executing the MSA and work order, and the issue is unimportant to our resolution of the appeals.

session . . . . Engaging in mediation is a condition precedent to any other form of binding dispute resolution.

11.2  Any controversy or claim not resolved through mediation shall be settled according to the disputes resolution procedures in the Prime Contract.

The following subsections, 11.3 and 11.4, dealt with disputes that involved the work of any subcontractor.  They permitted SAL to participate in "the assertion or defense" of its work in the procedure outlined under the Prime Contract, and obligated Pike to pay SAL its share of any recovery it obtained against Wegmans, or have SAL pay its share of any award Wegmans obtained against Pike that involved SAL's work.  The next subsection provided:

11.5  If the Prime Contract does not provide a disputes resolution procedure, or if, in the sole judgment of [Pike], the . . . dispute . . . is principally between [Pike] and [SAL,] and is not governed by Subparagraphs 11.1 through 11.4, then such . . . dispute . . . shall be determined as . . . provided in Paragraph 11.9.

11.6  Completion of the dispute resolution procedure shall be a condition precedent to the right of [SAL] to commence . . . any legal action against [Pike].

. . . .

11.9  All . . . disputes, and other matters in question between [SAL] and [Pike] arising out of or related to the [MSA] . . . , except as specifically governed by the foregoing provisions . . . shall be decided by arbitration in accordance with the . . . Rules of the American

7

Arbitration Association . . . at the sole option of [Pike]. If a demand for arbitration is filed by [SAL], [Pike] shall advise [SAL], within thirty (30) days . . . if [it] exercises the option to arbitrate or rejects arbitration[,] such election, once made, shall be binding. . . . This agreement to arbitrate shall be specifically enforceable under applicable law in any court having jurisdiction thereof. The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

<u>Procedural History Relevant to Both Appeals</u>

The commonality of the motion record before each judge allows us to condense the procedural history of the appeals. Pike's motions to dismiss alleged the forum selection provision of the Prime Contracts, incorporated by reference into the MSA, deprived the Law Division of subject matter jurisdiction. <u>R.</u> 4:6-2(e). Each motion was supported by a certification from Pike's vice-president that essentially only identified copies of the applicable Prime Contract and the MSA and the respective work order for that project.

In opposing the motions, SAL provided certifications from its president and CEO, as well as additional documentary information. Citing overdue payments exceeding $2.7 million, SAL filed a construction lien against the Hanover project in May 2018, and, citing more than $1.8 million in overdue payments, it filed a similar lien against the Montvale project in June. SAL's

president cited the "confusing, ambiguous and unclear" dispute resolution provisions in the MSA. In a September 2018 letter citing both projects, SAL's counsel requested Pike "advise . . . as to the manner" it wished to proceed under the MSA. He stated that if no response was received in four days, "SAL w[ould] presume that Pike has elected to arbitrate, and . . . file a demand for arbitration with the [AAA]."

On October 22, 2018, plaintiff paid the necessary filing fee and requested AAA mediation as to its claims for both projects. The record reveals that in November, AAA noted "the parties [were] still reviewing the locale for the mediation[.]" Apparently, hearing no objection from Pike to mediating in New Jersey, SAL's counsel contacted AAA for a list of New Jersey-based mediators. In late November, SAL's counsel forwarded its ranking of those mediators supplied by AAA; having not heard from Pike, AAA asked if it agreed to "any of the . . . mediators." AAA followed with an email on December 13, 2018, indicating it still had not received any response from Pike's counsel. On December 14, SAL's counsel notified AAA that it was taking Pike's failure to respond as an "elect[ion] to waive mediation."

Pike's counsel sent an email to SAL's attorney on December 17, noting the press of his schedule and his intention to "confer . . . regarding scheduling and

location of the mediation later" that day. Pike's counsel intended to "get the mediation on track without further delay." SAL's counsel responded, indicating a "willing[ness] to mediate if it can be scheduled to take place by the first week in January. If not, SAL w[ould] deem the mediation process to have been waived[] and move forward accordingly." A December 26 email from Pike's counsel to AAA indicated an agreement to mediate in Rochester and asked for a list of possible mediators in that area. Although AAA supplied a list, SAL responded with its choices, and AAA asked on two more occasions for Pike's selection, the record lacks any response. SAL's counsel sent written notification to AAA and to Pike's counsel that it deemed the lack of response a waiver of mediation. AAA closed its case file. On February 22 and 25, 2019, SAL filed first amended complaints in Morris and Bergen County, respectively.

## A-5657-18

Following oral arguments on Pike's motion to dismiss in the Bergen County litigation, the judge granted the motion in part. In a thorough written opinion, the judge noted the "general rule in New Jersey . . . that 'forum selection clauses are prima facie valid and enforceable.'" (quoting Caspi v. Microsoft Network, LLC, 323 N.J. Super 118, 122 (App. Div. 1999)). She found that "[p]laintiff d[id] not dispute the existence of the forum selection clause or its

10

incorporation into the subcontract."[3] The judge concluded the forum selection clause was clear, unambiguous and enforceable. She did not, however, dismiss SAL's Construction Lien Law cause of action, noting the statute required venue lay in Bergen County.

Plaintiff filed a motion for reconsideration relying solely on an unpublished opinion decided shortly before oral argument on Pike's motion, ERCO Interior Sys., Inc. v. Nat'l Commercial Builders, Inc., No. A-4640-17 (App. Div. May 7, 2019).[4] There, our colleagues considered a forum selection clause in a subcontractor agreement between a New Jersey subcontractor and a Kansas general contractor for a New Jersey project that expressly required all litigation arising from the agreement to be filed in Kansas. In a well-reasoned

---

[3] A transcript of the oral argument is not included in the record, but it would appear from SAL's submissions in opposition to the motion to dismiss, it did contest incorporation of the forum selection clause by arguing the terms of the documents were ambiguous and confusing. SAL also argued that PIKE waived enforcement of the forum selection and disputes resolution provisions by failing to respond appropriately to the mediation process. The judge did not address the waiver argument, and it is not asserted by SAL on appeal. We nevertheless described the documents contained in the motion record regarding SAL's efforts to arrange for the mediation for another reason, which we describe below.

[4] Although citing an unpublished opinion is generally forbidden, we do so here "to provide a full understanding of the issues presented[.]" Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015).

11

opinion, the panel concluded the forum selection provision was unenforceable because it violated the public policy undergirding N.J.S.A. 2A:30A-2(f). Id. at 5–6.

After oral argument, the judge granted SAL's reconsideration motion. In her written statement of reasons, the judge noted that unlike the subcontractor agreement in ERCO, the MSA did not include a forum selection clause, and the Prime Contract was not attached to or included as an addendum to the MSA. Instead, the MSA only listed the Prime Contract by reference. Reasoning that "where there is no forum selection clause specifically contracted for as a provision in the subcontract, the public policy favoring litigation of these claims in New Jersey is stronger[,]" and the MSA's "general references to the terms of the [P]rime [C]ontract, not attached or otherwise provided, [are] not sufficient." We granted Pike leave to appeal from the judge's order.

## A-5658-18

The ERCO decision was issued between the filing of Pike's motion to dismiss and oral argument before the judge in the Morris County litigation. In a thorough written statement of reasons, the judge rejected Pike's argument that the parties "contract[ed] around" the PPA. After considering ERCO and the language and legislative history of the statute, the judge concluded it expressed

12

a clear public policy that "dispute resolution and civil actions arising out of construction contracts should proceed in this State[,]" and denied Pike's motion. It appeals from that order.

## II.

Pike presents the same arguments in both appeals. It contends the PPA does not express a "[s]trong" public policy that deprived the parties of their right to contract through "the [c]lear and [u]nambiguous [f]orum[ s]election [p]rovision" of the [MSA]. It argues that the PPA itself permits the parties to contract around its provisions. Alternatively, Pike asserts that if we conclude the PPA prohibits the forum selection clause in this case, we should apply our holding prospectively.

SAL posits the same arguments in its opposition to both appeals. It contends that the dispute resolution provisions of the MSA were "ambiguous" and did not clearly incorporate the forum selection provision in the Prime Contracts. SAL also argues that the PPA evinces a strong public policy of New Jersey and trumps enforceability of the forum selection provision. Lastly, SAL contends that the PPA, the CLL, and the entire controversy doctrine (ECD) compel that the litigation proceed in New Jersey.

A-5657-18T1

Having considered these arguments, we affirm for reasons different than those expressed by the two motion judges. See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) ("[I]t is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001))).

We recognize some landmarks that guide our review. "A court lacks subject matter jurisdiction over a case if it is brought in an ineligible forum." Hoffman v. Supplements Togo Mgmt., LLC, 419 N.J. Super. 596, 606 (App. Div. 2011) (citing Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 65, (1978)). "In particular, a plaintiff cannot file suit in a court if he or she has entered into an enforceable agreement to bring such claims in another forum." Ibid. (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593–94 (1991)).

The enforceability of a forum selection clause presents a legal issue, which we examine de novo without deference to the motion court's reasoning. Id. at 605; see also Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 295 (3d Cir. 2001) (explaining the "interpretation and enforcement of a forum selection clause is a matter of law" subject to plenary review). "As a general rule, a forum selection clause is enforceable unless it is the result of 'fraud,

undue influence, or overweening bargaining power,' is 'unreasonable,' or violates a 'strong public policy.'" Paradise Enters., Ltd. v. Sapir, 356 N.J. Super. 96, 103 (App. Div. 2002) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10–15 (1972)).

Here, relying on ERCO's rationale, the motion judge in the Morris County litigation concluded the forum selection provision in the Prime Contract violated the strong public policy of New Jersey as expressed in the PPA. The Bergen County judge also concluded that the forum selection provision violated the public policy expressed by the PPA, but she reached that determination by relying on the lack of any forum selection clause in the MSA itself, and Pike's failure to include the Prime Contract as an exhibit or addendum to the MSA. We discern this latter aspect of the judge's decision reflects her conclusion that the forum selection clause was not properly incorporated into the MSA.

We need not determine whether N.J.S.A. 2A:30A-2(f) is a such strong statement of public policy that sophisticated business parties, like SAL and PIKE, may not contract it away. In other words, we do not decide whether every contract "for the improvement of structures" in New Jersey, see ibid., that includes a foreign forum selection clause is per se unenforceable whenever one party objects. Our hesitation in deciding that issue should not be taken

necessarily as our disagreement with the decision in ERCO, which presented different facts than those present in these two appeals.

Rather, we agree with SAL's other contention, i.e., that the terms of the MSA and Prime Contracts were so ambiguous that there was never mutual assent to the forum selection provision. We therefore refuse to enforce it against SAL.

"When a trial court's decision turns on its construction of a contract, appellate review of that determination is de novo." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (citing Kieffer v. Best Buy, 205 N.J. 213, 222 (2011)). "Appellate courts give 'no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Ibid. (quoting Kieffer, 205 N.J. at 223).

"As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019). When "the cumulative effect of the many inconsistencies and unclear passages" in a series of documents are apparent, we have not hesitated to find a lack of mutual assent. NAACP of Camden Cty. East v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 438 (App. Div. 2011). Ambiguity arises "if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Cooper River Plaza East,

LLC v. Briad Grp., 359 N.J. Super. 518, 528 (App. Div. 2003) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)).  It is for the court to decide as a matter of law whether the terms of a contract are clear or ambiguous. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citing Nester, 301 N.J. Super. at 210).

The MSA and the work orders, the only agreements to which SAL was a party and signatory, did not contain a forum selection clause.  Indeed, the only provision in those documents that discussed venue at all was section 11.1 of the MSA, and that required only that SAL first submit its dispute to mediation in Monroe County, New York.  We set forth the evidence in the motion record to demonstrate not that Pike waived mediation, but rather to show that SAL undisputedly repeatedly attempted to comply with the provision without success.  The evidence also demonstrates the confusion as to what was to occur in the absence of any mediation.

Under section 11.2 of the MSA, in the event of a failed mediation, "[a]ny controversy or claim" was to "be settled according to the disputes resolution procedures in the Prime Contract."  The disputes resolution procedures in the Prime Contracts were contained in Article 13, the agreement's "General Provisions."  The forum selection provision was contained in Article 13.1,

entitled "Governing Law, Jurisdiction and Venue." It did not describe the disputes resolution process at all. A separate article, Article 13.7, entitled "Disputes[,]" set forth the actual procedure.

Moreover, the dispute resolution procedure as described in the Prime Contracts had little to do with resolving any dispute between SAL, a subcontractor, and Pike, the general contractor. Under Article 13.7.1, the procedure only became operative "[i]f [Pike] disagree[d] with a determination of [Wegmans] or if, in the opinion of either party, the other party ha[d] failed to comply with the requirements of the Contract Documents[.]" The five subsections in Article 13.7.2 described the actual process, setting forth informal attempts at resolution by Pike's and Wegmans "First Level" and "Second Level" representatives, and culminating in a "conclusive, final and binding" decision by Wegmans' representative. Nothing in the procedure describes how SAL could initiate the dispute resolution process of the Prime Contracts without Pike's agreement to present the claim to Wegmans.

The terms of the MSA becoming even more confusing thereafter. Under Article 11.5, "if, in the sole judgment of [Pike], the . . . dispute . . . is principally between [Pike] and [SAL,] . . . then such . . . dispute . . . shall be determined as . . . provided in Paragraph 11.9. Paragraph 11.6 made "[c]ompletion of the

18

dispute resolution procedure," presumably, the dispute resolution procedure in the MSA, "a condition precedent to the right of [SAL] to commence . . . any legal action against [Pike]." Notably, it contains no forum selection clause. Finally, under Paragraph 11.9, "except as specifically governed by the foregoing provisions," all disputes between SAL and Pike must "be decided by arbitration in accordance with the . . . Rules of the American Arbitration Association . . . at the sole option of [Pike]." The arbitration provision does not contain a forum selection clause, nor does it describe SAL's remedy if Pike unilaterally refused to arbitrate any dispute.

In short, we conclude that the MSA's incorporation by reference of the Prime Contracts did not include the forum selection provision, because the forum selection provision was in a separate section of the Prime Contracts, distinct from the disputes resolution provisions referenced by the MSA and allegedly incorporated into the MSA. Moreover, even if our assessment in this regard is incorrect, the ambiguity and confusion of the documents' terms as to how and in which forum SAL could resolve any dispute between it and Pike is unassailable. Indeed, nowhere does Pike suggest the proper interpretation of the provisions so as to provide SAL with a remedy. Instead, Pike simply relies on

19

the forum selection clause of the MSA as a talisman that it contends compels dismissal of the complaints.

We hasten to add that our decision is limited only to the unenforceability of the forum selection provision under the particular facts presented by these appeals.

Affirmed in both appeals.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5657-18T1