**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3879-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVID HENRY,

    Defendant-Appellant.

_____

> Submitted September 29, 2020 – Decided November 13, 2020
>
> Before Judges Messano and Suter.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 06-04-1567.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).
>
> Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

A jury convicted defendant David Henry of the lesser-included offense of aggravated manslaughter in the death of his wife, Jacqueline, and the court sentenced him to a twenty-two-year term of imprisonment with an eighty-five-percent period of parole ineligibility. At trial, the State's medical examiner, Dr. Paul J. Hoyer, concluded that Jacqueline died as the result of ligature strangulation. State v. Henry, No. A-5663-07 (App. Div. Apr. 15, 2011) (Henry I) (slip op. at 17).[1] Defendant told investigators that he and his wife were alone in their home when he "heard a 'loud crash[]'" and discovered his wife lying on the floor gasping for air. Id. at 2–3. The defense expert, Dr. Karl O. Schwarz, opined that even though Jacqueline was still alive when emergency medical responders arrived and no ligature was found by authorities at the scene, Jacqueline died as the result of a "self-inflicted hanging," part of an "autoerotic" episode in which a person "enhance[s] sexual feeling by depriving themselves

---

[1] Although citing an unpublished opinion is generally forbidden, we do so here to provide a full understanding of the issues presented and pursuant to the exception in Rule 1:36-3 that permits citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law[.]" See Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015).

of oxygen." Id. at 17 (alteration in original). We affirmed defendant's conviction and sentence on direct appeal. Id. at 2.

Defendant filed a timely petition for post-conviction relief (PCR) alleging various claims of ineffective assistance of counsel (IAC). State v. Henry, No. A-0212-14 (App. Div. June 14, 2016) (Henry II) (slip op. at 4). The PCR judge, Edward J. McBride, Jr., rejected the arguments made by appointed PCR counsel and defendant in a pro se supplemental brief, and he denied the petition. Id. at 5–6. Defendant appealed, and, as part of a pro se supplemental appellate brief and appendix, he supplied an affidavit from Dr. Schwarz, dated March 17, 2015, more than seven years after trial. Id. at 6–7. Dr. Schwarz stated that he had many disagreements with defense counsel and suffered from various medical ailments and depression at the time of trial. Id. at 7. Most importantly, Dr. Schwarz

> asserted that he continued to review the case with colleagues at the National Institute of Forensic Medicine in Israel and came to the conclusion that Jacqueline's death was accidental. He opined that Jacqueline "fainted and collapsed into the sharp end of a bookcase, precipitating a fatal vasovagal reflex. This accidental blow to the neck activated the vagal nerve and caused her heart rate and breathing to slow down." Schwarz claimed that "[d]ue to the continuing evolution of forensic science and the complexity of the forensic findings in this case, it was impossible to render proper expert forensic assistance at trial." Finally, Schwarz

3

asserted that "[n]one of this information was available prior to [defendant's] trial[,]" and "[n]either the State's expert nor the defense[] expert alone could adequately address the complexity of the forensic findings in this case without peer review, which did not occur until after the trial."

[Id. at 7–8 (alterations in original).]

Noting the affidavit was never presented to Judge McBride, we remanded the matter

so that the . . . judge may consider [Dr.] Schwarz's affidavit and whether, in conjunction with the entire record, defendant has established a prima facie case for PCR limited to 1) his IAC claim regarding [Dr.] Schwarz's trial testimony and 2) defendant's request for a new trial based upon "newly-discovered evidence."

[Id. at 14.]

In all other respects, we affirmed the denial of defendant's PCR petition. Ibid.

On remand, Judge McBride consider oral argument and concluded in a thorough written opinion that defendant failed meet the standards for a new trial based on newly discovered evidence. Citing the tripartite test enunciated by the Court in State v. Carter, 85 N.J. 300, 314 (1981), Judge McBride concluded that Dr. Schwarz's new theory of the cause of Jacqueline's death was merely a "newly[-]formed, self-contradictory opinion[,]" and there was no support for Dr. Schwarz's claim that peer review was unavailable at an earlier time. The judge

4

found that unlike the "detailed, exhaustive affidavit" supplied on PCR by the defendant in State v. Behn, 375 N.J. Super. 409 (App. Div. 2005), Dr. Schwarz's affidavit failed to demonstrate that "the peer review that prompted [him] to second-guess his [trial] opinion was 'not discoverable by reasonable diligence' before trial." The judge also concluded that the new theory as to the cause of Jacqueline's death, even if presented to the jury, would not have altered the outcome of the trial. Judge McBride also addressed and rejected the remaining IAC claims relating to trial counsel's interactions with Dr. Schwarz and the doctor's medical condition during trial. However, the judge determined that Dr. Schwarz's claim that the "unusual forensic opinion he presented at trial had never been subjected to peer review beforehand[,]" and whether defense counsel was aware of this, required an evidentiary hearing.

At the hearing, the State called trial counsel as its sole witness; defendant did not testify, nor did he call any witnesses or supplement Dr. Schwarz's affidavit. Trial counsel, a certified criminal trial attorney, testified at length about his experience, the amount of time he spent preparing a defense, and his retention of Dr. Schwarz as an expert. Counsel explained that he initially developed a working relationship with another expert who indicated a familiarity with similar cases where people had fallen, suffered bruising, and

5

died. However, after working on the case for several months, that expert advised counsel that he could no longer offer such an opinion at trial because the bruising on Jacqueline's neck indicated strangulation.

Counsel discovered Dr. Schwarz's name while researching cases involving ligature strangulation and contacted an attorney who had used the doctor as an expert. She recommended Dr. Schwarz to trial counsel, and he retained the doctor. After the doctor concluded Jacqueline's death may have resulted from autoerotic activity, counsel attended a seminar in Las Vegas where noted forensic scientists discussed the topic. Trial counsel discussed Dr. Schwarz's theory with other lawyers and recalled that none criticized the strategy. While he admitted never asking Dr. Schwarz if his theory had been "peer reviewed," counsel had thoroughly reviewed the doctor's resume and knew he had qualified as an expert at other trials. In the end, counsel concluded calling the doctor as a witness could create reasonable doubt at trial, and, he noted that the jury acquitted defendant of murder and found him guilty of the lesser-included crime of aggravated manslaughter.

In a comprehensive written opinion, Judge McBride explained that he found trial counsel's testimony "credible in all respects." Recounting some of the testimony, the judge concluded counsel's decision to call Dr. Schwarz as a

witness at trial "reflected the reasoned exercise of professional judgement[.]" The judge rejected the argument that counsel's failure to have Dr. Schwarz's opinion reviewed by peers demonstrated ineffective assistance, concluding that counsel had "adequately investigated the issues and made a strategic decision to proceed with full awareness of the relative risks and benefits." The judge further concluded that "there [was] not a reasonable probability that the outcome would have been different had the defense not presented to the jury Dr. Schwarz's autoerotic hanging theory." Judge McBride entered an order denying defendant's PCR petition, and this appeal followed.

Before us, assigned counsel raises a single issue, i.e., that trial counsel rendered ineffective assistance because he produced an expert witness at trial who testified "to an unprecedented theory . . . which had not been peer-reviewed[.]" In his pro se supplemental brief, defendant raises several points for our consideration, which we discuss seriatim.

Having considered these arguments in light of the record and applicable legal standards, we affirm.

I.

To establish an IAC claim, a defendant must satisfy the two-prong test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted

by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). First, he must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 52 (quoting Strickland, 466 U.S. at 687). Second, a defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

Importantly, "[o]ur standard of review is necessarily deferential to a PCR court's factual findings . . . that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013) (citing State v. Harris, 181 N.J. 391, 415 (2004)). We review de novo, however, the trial court's application of those facts to the legal principles involved. Harris, 181 N.J. at 416.

In assessing defendant's claim, we "give great deference to counsel's performance and must strongly presume that the attorney's conduct constituted reasonable professional assistance[,]" State v. Petrozelli, 351 N.J. Super. 14, 21–22 (App. Div. 2002) (citing Strickland, 466 U.S. at 689), remaining wary to "avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997) (quoting Strickland, 466 U.S. at 689).

"As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'" State v. Castagna, 187 N.J. 293, 314–15 (2006) (alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)). Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" Strickland, 466 U.S. at 690.

Defendant contends that despite Judge McBride's factual findings, trial counsel's decision to produce Dr. Schwarz as a witness, knowing his theory would be attacked on cross-examination and had not been subjected to peer review, was presumptively per se ineffective assistance. See United States v. Cronic, 466 U.S. 648, 658 (1984). "[W]hen the level of counsel's participation makes the idea of a fair trial a nullity, no prejudice need be shown. It is presumed." State v. Davis, 116 N.J. 341, 352 (1989) (citing Cronic, 466 U.S. 648). "An example of the Cronic presumption would be a failure by counsel for the defendant to cross-examine a key prosecution witness." Ibid. (citing Cronic, 466 U.S. at 659).

As Judge McBride found, trial counsel spent countless hours working with Dr. Schwarz, provided him with the necessary information to formulate a

defense, and independently researched the autoerotic strangulation theory. The forensic evidence adduced by the State was that Jaqueline died from ligature strangulation, and only she and defendant were home at the time. Defendant gave authorities conflicting versions of the evening's events, and, at one point, suggested a known intruder entered the home and mistook Jacqueline for defendant's mother, against whom the intruder bore a grudge. Henry I, slip op. at 2–12. Defendant's explanation for how his wife died — that she must have fallen, bruised her neck, and stopped breathing as a result — was unsupported by any objective fact or medical opinion.

"New Jersey courts . . . continue to evaluate the competence of experts within the framework of a defendant's claim of ineffective assistance of counsel." State v. DiFrisco, 174 N.J. 195, 244 (2002). The cognizable claim is not that the expert may have provided "substandard services[,]" but rather "the deficient performance that implicates a defendant's right . . . is the performance of counsel who obtained the expert's examinations or presented the evidence at trial." Ibid. We reject the claim that trial counsel's decision to call Dr. Schwarz as a witness and offer his expert opinion at trial was per se ineffective assistance.

II.

In his pro se supplemental brief, defendant contends he was entitled to a new trial based on newly-discovered evidence, i.e., Dr. Schwarz's affidavit and "scientific information and studies" he provided to Judge McBride in his submissions.[2]  He also argues that Dr. Schwarz's affidavit alone was sufficient to justify a new trial.  We disagree.

A party is entitled to a new trial based on newly discovered evidence if the evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."  Carter, 85 N.J. at 314.  Prongs one and three are "inextricably intertwined."  Nash, 212 N.J. at 549.  "'[E]vidence [that] would shake the very foundation of the State's case and almost certainly alter the earlier jury verdict' could not be categorized as 'merely cumulative.'"  Ibid. (quoting State v. Ways, 180 N.J. 171, 189 (2004) (second alteration in original).   "The power of the newly discovered evidence to alter

---

[2] The referenced "scientific information and studies" are not part of the appellate record.  However, defendant's pro se brief supplies his summary of the information, which he claimed supported a finding that Jacqueline's death was caused by "the accidental activation of the carotid sinuses and the vagus nerve resulting in a traumatic carotid sinus reflex death."

the verdict is the central issue, not the label to be placed on that evidence." Id. at 549–50 (quoting Ways, 180 N.J. at 191–92).

Here, we agree with Judge McBride that Dr. Schwarz's affidavit was little more than a contradiction of his original opinion about the cause of Jacqueline's death. The affidavit provided no support for the doctor's new opinion that Jacqueline died "of accidental blow to the neck," other than discussions he had with unnamed forensic pathologists in Israel. This lack of specificity also undermined Dr. Schwarz's assertion that this new opinion was dependent on "the continuing evolution of forensic science," implying, without any support, that the facts and data that were the bases for the new opinion could not have been discovered by the exercise of reasonable diligence beforehand. Moreover, defense counsel testified that he, defendant and Dr. Schwarz discussed the very theory the doctor now espoused — Jacqueline died after falling and striking the sharp end of a bookcase — before trial, and Dr. Schwarz rejected it.

Judge McBride did not specifically address the medical articles defendant supplied prior to the PCR remand. Nevertheless, Dr. Schwarz's affidavit makes no reference at all to the articles defendant now asserts support the opinion. In other words, none of the scholarly medical literature that defendant produced

was necessarily endorsed by the doctor as being applicable to this case. And, defendant offered no other expert medical opinion to provide this connection.

We also reject defendant's corollary argument, specifically that the affidavit alone was sufficiently detailed to meet the three prongs of the new trial standard. In Behn, which Judge McBride relied upon, the State's ballistics expert, an FBI agent, testified at trial that the lead fragments inside the victim's body came from the same lead bullets the defendant possessed. 375 N.J. Super. at 419. On PCR, the defendant supplied specific citation to scientific research conducted post-trial, as well as a detailed affidavit from the FBI's retired chief forensic metallurgist that demonstrated the FBI's testing was "flawed and scientifically invalid." Id. at 425. We concluded that this new evidence was of such a caliber that it "would have effectively neutralized the testimony" of the trial expert and ordered a new trial. Id. at 433. The paucity of information in Dr. Schwarz's affidavit, compared with that supplied by the experts in Behn, demonstrates why this argument requires no further discussion in a written opinion. R.2:11-3(e)(2).

In the remaining points of his pro se submission, defendant argues that the opinions offered by both Dr. Hoyer and Dr. Schwarz at trial as to the cause of death — ligature strangulation versus autoerotic ligature strangulation — were

13

not based upon generally accepted principles in the forensic science community. See In re Accutane Litig., 234 N.J. 340, 349 (2018) (discussing standards for admissibility of expert scientific evidence under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)). Defendant's pro se supplemental brief goes to great length to point out the shortcomings of both opinions based on the trial evidence and citations to various medical literature.

However, certainly as it relates to Dr. Hoyer, a challenge to the admissibility of his trial testimony could have been raised on direct appeal but was not. It is therefore barred from PCR review. R. 3:22-4. And, as already noted, any challenge to the competency of Dr. Schwarz's trial testimony has already been addressed in the context of defendant's IAC claims. See DiFrisco, 174 N.J. at 244.

Defendant also contends he met the Strickland/Fritz standard and demonstrated ineffective assistance of trial counsel requiring reversal of his conviction and a new trial. We have already addressed that argument and it requires no further discussion. R. 2:11-3(e)(2).

Lastly, defendant argues Judge McBride erred by not conducting an evidentiary hearing that included Dr. Schwarz's testimony. He notes that prior

to rendering his written decision on the new trial application, the judge mused that any evidentiary hearing might necessarily include both trial counsel and Dr. Schwarz. However, defendant acknowledges in his brief that this issue was never raised below. Indeed, our review of the transcripts of the proceedings fails to reveal any indication that PCR counsel intended to produce Dr. Schwarz as a witness or that she required the court's assistance to compel his attendance. Nothing in the record indicates that PCR counsel sought to supplement the doctor's affidavit, already nearly four years old at the time of the remand. On the record provided, we cannot conclude Judge McBride erred in not sua sponte requiring Dr. Schwarz's appearance at the remand hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15