**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1468-23

INNOVATION OPTICS, INC.
and ALAN GREENBERG,

     Plaintiffs-Appellants,

v.

COREY M. NOTIS, M.D., P.A.,
d/b/a ASSOCIATES IN EYE CARE,
COREY M. NOTIS, M.D., RIVER
CITY EYE ASSOCIATES, LLC,
ASSOCIATED RETINAL
CONSULTANT LLC, d/b/a NJ
RETINA, ASSOCIATES IN
EYECARE OPTICAL, and
CHRISTOPHER SANCHEZ,

     Defendants-Respondents.

_____

Argued February 4, 2025 – Decided March 4, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3354-19.

Paul S. Grossman argued the cause for appellants (Weiner Law Group, LLP, attorneys; Paul S. Grossman,

of counsel and on the briefs; Michael Mietlicki, on the briefs).

Eric S. Latzer argued the cause for respondent Associated Retinal Consultants d/b/a NJ Retina (Cole Schotz, PC, attorneys; Eric S. Latzer, of counsel and on the brief).

PER CURIAM

Plaintiffs Innovation Optics, Inc. and Alan Greenberg appeal from an August 6, 2021 Law Division order granting defendant NJ Retina's cross-motion for summary judgment and dismissing plaintiffs' complaint with prejudice; a November 19, 2021 order awarding $72,984.95 in sanctions, attorney's fees, and costs against plaintiffs; and a February 4, 2022 order denying plaintiffs' motion for reconsideration and partially denying the reconsideration of sanctions, directing sanctions only against plaintiffs and not their counsel.

For the reasons that follow, we affirm the grant of summary judgment to NJ Retina and dismissal of plaintiffs' complaint with prejudice. We also affirm the award of sanctions. However, because the court did not provide findings of fact and conclusions of law for the amount of sanctions imposed as required by Rule 1:4-8(d), we remand for such findings and an analysis of the RPC 1.5(a) factors.

2

I.

Our review of an order granting summary judgment requires our consideration of "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Here, we discern the following facts from our review of the parties' Rule 4:46-2 statements and the record of the proceedings before the court, viewed in the light most favorable to plaintiffs. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

A.

Factual Background

In 1978, Greenberg, who is a licensed optician, founded Innovation Optics, an optical store. Sometime in 2002, defendant Corey M. Notis, M.D. was a young practitioner who had just purchased an ophthalmology practice at 900 Stuyvesant Avenue in Union (Union Office). That same year, plaintiffs and Dr. Notis allegedly entered into an informal arrangement whereby plaintiffs referred patients who needed ophthalmologic surgeries to Dr. Notis.

These informal arrangements allegedly became more formal once plaintiffs introduced Dr. Notis to two ophthalmologists located adjacent to plaintiffs' corporate office at 127 Chestnut Street in Roselle Park (Roselle Park Office). According to plaintiffs, Dr. Notis benefited from this introduction by performing all the surgeries for one of the doctor's patients. As a result of the introductions, Dr. Notis began working one day per week in the Roselle Park Office rent free so he could perform follow-up visits with referral patients.

In 2004, Dr. Notis invited plaintiffs to open a practice in the Union Office, which Dr. Notis had previously purchased. Prior to the move, however, Dr. Notis ostensibly promised plaintiffs "that he would not abandon [plaintiffs] for any reason once the move was made, since . . . Dr. Notis would absorb [plaintiffs'] entire customer list."

Further, Dr. Notis allegedly "expressly or impliedly agreed that once [plaintiffs] moved . . . to the [Union Office], that all of [plaintiffs'] medical referrals from his other offices, and those of the optometrists working for him at those offices, also would be sent to . . . Dr. Notis and Associates in Eyecare." Thus, plaintiffs assert "the practices of Innovation Optics and . . . Associates in Eyecare became combined for many purposes." As plaintiffs allege in their third amended complaint,

4

> defendants Dr. Notis and Associates in Eyecare desired to cause their patients and the public to believe that defendant Associates in Eyecare had ownership and control over [plaintiffs], by putting defendant Associates in Eyecare's name on . . . [plaintiffs'] door, above . . . [plaintiffs'] name, even though defendant Associates in Eyecare conducted no actual business of its own in . . . [plaintiffs'] rental space.

In addition, "As a result of the mutual 'cross-pollination' of the businesses, the parties grew together as planned, although the arrangement was more beneficial to . . . Dr. Notis, Associates in Eyecare, and River City, than to . . . plaintiffs."

In 2014, Dr. Notis opened a second practice in Springfield (Springfield Office). Prior to the opening of the Springfield Office, Dr. Notis allegedly promised plaintiffs "that he would be able to run the Springfield [Office], would be able to hire opticians, would earn the profits at that store, and would pay rent to the landlord . . . ."

Dr. Notis applied and was approved for membership in the insurance provider Vision Services Plan (VSP). In addition, allegedly

> [u]nbeknownst to . . . plaintiffs, at the time they applied for participation in the VSP plan, and at all times thereafter, . . . Dr. Notis and Associates in Eyecare falsely held themselves out to VSP, and thus to all insureds of VSP who were their patients, as being at least . . . (51%) . . . owners of [plaintiffs'] business, and otherwise acted as a de facto owner or partial owner of [plaintiffs' business] for purposes of the VSP insurer and its insureds, yet paid no direct consideration to . . .

plaintiffs which would have entitled them to claim ownership.

In January 2019, plaintiffs were approached by Bob Brill, an employee of Associates in Eyecare, and were advised that Dr. Notis was going to sell his practices and real estate for $10,000,000. Brill "later advised numerous individuals that such sale was being made to NJ Retina, or a related entity." Plaintiffs claim Brill specifically advised them that "Associates in Eyecare and, presumably, . . . Dr. Notis [and] River City, . . . 'did not want to leave any money on the table' when making the sale to NJ Retina, such that they wanted plaintiffs out of the building."

Further, plaintiff alleges that after they had taken "affirmative steps" to open the new store in reliance on Dr. Notis's promise, he told plaintiffs "they are going in a different direction" and cut plaintiffs out of the "very profitable and valuable Springfield [Office]."

Plaintiffs also alleged Dr. Notis and/or Associates in Eyecare falsely held themselves out to VSP as "owners" of plaintiffs' business to NJ Retina, and if the purchase of Dr. Notis's assets was completed, the "ongoing relationship with [plaintiffs] as the building's ophthalmology practice necessarily would have to be terminated."

6

In early 2019, NJ Retina and Dr. Notis engaged in preliminary discussions regarding the purchase of his practice at the Union and Springfield Office locations. In March 2019, NJ Retina sent Dr. Notis a draft letter of intent with regard to the potential purchase of the assets of his medical practice. Ultimately, the discussions went nowhere, and Dr. Notis did not sign the letter of intent.

B.

The Litigation

On September 24, 2019, plaintiffs filed a fifteen-count complaint against defendants. Relevant here, plaintiffs asserted claims against NJ Retina for tortious interference with contractual relations (counts one, two, and three); tortious interference with prospective economic relations (count five); unjust enrichment (count eleven); conspiracy (count thirteen); and declaratory judgment (count fifteen). In response, on October 23, 2019, NJ Retina's counsel sent a letter to plaintiffs' counsel notifying him that the claims pled against NJ Retina were frivolous within the meaning of Rule 1:4-8 and N.J.S.A. 2A:15-59.1 (the Frivolous Litigation Act), and demanded the complaint be withdrawn with prejudice. The Rule 1:4-8 letter specifically stated that NJ Retina "did nothing more than engage in preliminary discussions with Dr. Notis regarding the possibility of acquiring his practice." Plaintiffs' counsel rejected NJ Retina's

A-1468-23

demand to withdraw their complaint, claiming there was "no backup documentation" to support NJ Retina's assertions and "no discovery has yet been conducted."

On November 20, 2019, NJ Retina filed a motion to dismiss the complaint in lieu of filing an answer, or alternatively for summary judgment, which included a certification of Rick Turk, the chief development officer at NJ Retina. Turk certified that NJ Retina did not enter into a transaction with Dr. Notis. A prior court denied NJ Retina's motion to dismiss without prejudice. Discovery proceeded.

On July 13, 2020, plaintiffs filed an amended complaint, which included "Allegations of Acts Subsequent to the Complaint's Filing" pertaining to Dr. Notis and other defendants, which alleged wrongdoing while the litigation was pending. The amended complaint did not allege any new allegations against NJ Retina. NJ Retina filed an answer to the amended complaint. Dr. Notis moved for a protective order to bar plaintiffs' request to obtain documents concerning his finances. At the motion hearing, the court asked plaintiffs' counsel why NJ Retina was a party to the case. Counsel "conceded" plaintiffs had no claim against NJ Retina if Dr. Notis did not execute a letter of intent.

A-1468-23

On November 23, 2020, NJ Retina provided its written responses to document demands and interrogatories propounded by plaintiffs. The production of documents included a copy of NJ Retina's draft letter of intent that Dr. Notis never signed and contemporaneous emails exchanged between Dr. Notis or his representatives and NJ Retina regarding their potential transaction.

On January 8, 2021, NJ Retina sent a second Rule 1:4-8 frivolous litigation letter to plaintiffs. Plaintiffs again refused NJ Retina's demand for dismissal of their complaint.

Plaintiffs then filed a notice of motion seeking leave to file and serve a second amended complaint. NJ Retina filed opposition and a cross-motion for summary judgment and leave to amend. In support if its cross-motion for summary judgment, NJ Retina submitted another certification from Turk. In his certification, Turk explained that NJ Retina employs medical doctors who diagnose and treat retinal disorders.

Turk certified that NJ Retina is affiliated with NJ Eye LLC, an administrative services organization, which provides support services and other "non-clinical support services" to eyecare medical practices, including NJ Retina. Turk stated that NJ Eye LLC and NJ Retina have been acquiring the assets of ophthalmology and retina medical practices in this State and other east

9

coast states. He certified that Dr. Notis and NJ Retina's discussions for NJ Retina to purchase Dr. Notis's medical practice assets ultimately went nowhere and "never advanced beyond the preliminary interest phase in regard to the potential purchase of Dr. Notis's practice."

The trial court heard oral argument on NJ Retina's cross-motion for summary judgment on August 6, 2021. Following oral argument, the trial court granted summary judgment to NJ Retina finding "there's absolutely no basis to keep NJ Retina in this case." The trial court dismissed the amended complaint against NJ Retina with prejudice and denied NJ Retina's motion for leave to amend. That same day, plaintiffs filed a second amended complaint naming NJ Retina as a defendant. Ten days later, the trial court issued a supplemental order dismissing the second amended complaint against NJ Retina with prejudice.

On August 25. 2021, NJ Retina filed a motion seeking sanctions against plaintiffs and their counsel, pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1, arguing it was entitled to recover attorney's fees and costs for defending plaintiffs' frivolous complaints. Counsel for NJ Retina submitted a certification in support of the motion, which stated "NJ Retina never consummated a transaction with Dr. Notis" and "NJ Retina had no knowledge of or involvement,

whatsoever, in [p]laintiffs' allegedly long-standing 'de facto' relationship with Dr. Notis."

Counsel's certification explained that plaintiffs' responses to interrogatories "failed to identify any facts to support their claims against NJ Retina" in support of their allegations that NJ Retina "maliciously" and "without justification" interfered with the relationship between Dr. Notis and Greenberg. Counsel certified that plaintiffs answered, . . . "the specifics of the negotiations, discussions, communications, and transactions between . . . defendants is presently unknown to . . . plaintiffs." In response to NJ Retina's demands for dismissal, counsel certified that plaintiffs' counsel responded . . . "it is necessary for us to conduct discovery" to determine if "there are remaining interactions that may be actionable."

On November 19, 2021, the trial court conducted oral argument on the sanctions motion. The trial court granted the motion and awarded NJ Retina 50% of the fees it incurred in defending "a frivolous cause of action." The trial court awarded NJ Retina $72,984.95, comprised of $72,676.34 in counsel fees and $308.61 in costs, which was assessed against plaintiffs and their counsel. A memorializing order was entered.

On December 9, 2021, plaintiffs moved for reconsideration of the August 6 and November 19, 2021 orders. On February 4, 2022, the trial court denied plaintiffs' motion for reconsideration but modified its prior ruling to provide the sanctions award should have only been entered against plaintiffs and not their counsel. Plaintiffs and Dr. Notis entered a stipulation of dismissal with prejudice, which dismissed plaintiffs' claims against Dr. Notis and his companies. This appeal followed.

On appeal, plaintiffs make two primary arguments. First, they contend the trial court erred in dismissing their tortious interference claim based upon a basic misunderstanding of the law of that tort. Plaintiffs argue the trial court erred in granting summary judgment prior to the completion of discovery. Second, plaintiffs assert the sanction orders should be reversed because they were based upon the consideration of irrelevant or inappropriate factors; were not supported by proper findings of fact; and failed to consider whether there was proof of bad faith.

II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "The court's function is not 'to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A non-moving party "cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. Thus, "once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)).

Rule 4:46-2 defines the requisite procedure for presenting the alleged undisputed facts upon which a motion for summary judgment is founded, as well as the competent evidence supporting each of the proffered facts. The Rule mandates that a motion for summary judgment be supported by a statement of material facts that "cit[es] to the portion of the motion record establishing [each]

fact or demonstrating that [each fact] is uncontroverted." R. 4:46-2(a). "[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the movant's statement.'" Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(b)).

Indeed, "if the party opposing [a] summary judgment motion 'offers . . . only facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious, [they] will not be heard to complain if the court grants summary judgment.'" Igdalev, 225 N.J. at 480 (quoting Brill, 142 N.J. at 529) (internal quotation marks omitted) (alterations in original). "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact." R. 4:46-2(b).

A.

Tortious Interference Elements

Plaintiffs contend the trial court erred by requiring a transaction between NJ Retina and Dr. Notis because a subsequent transaction is not an element of

the tortious interference claim. To establish a claim for tortious interference with a prospective economic advantage, a "plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendant['s] malicious interference, and that it suffered losses thereby." Lamorte Burns & Co. v. Walters, 167 N.J. 285, 305-06 (2001) (citation omitted). For tortious interference with a contract a plaintiff must prove: (1) an existing contract or reasonable expectation of economic advantage; (2) intentional and malicious interference with that relationship; (3) the loss of the contract or prospective gain as a result of the interference (causation); and (4) damages resulting from that interference. Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 49 (App. Div. 1997) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52 (1989)).

"Whether the tort is denominated as an intentional interference with contractual advantage, or future economic advantage, the import is the same." Jenkins v. Region Nine Hous. Corp., 306 N.J. Super. 258, 265 (App. Div. 1997). "[I]n any action based on tortious interference . . . [the] interference [must] be malicious." Kopp, Inc. v. United Techs., Inc., 223 N.J. Super. 548, 559 (App. Div. 1988). Although these torts are separate causes of action, both have as their

15

focus the means of interference. Nostrame v. Santiago, 213 N.J. 109, 121-22 (2013).

Plaintiffs' contention that the trial court implied that "the existence of a subsequent transaction is not a required element in a cause of action for tortious interference" is misplaced and mischaracterizes the trial court's decision. The trial court never stated that a subsequent transaction was a required element in this case, but it would be impossible to intentionally and maliciously interfere with plaintiffs' and Dr. Notis's "de facto contract" or prospective contract without actual interference. At bottom, NJ Retina could not have intentionally or maliciously interfered with the purported de facto contract because there was no evidence of actual interference by NJ Retina. Because there was no transaction, there was no resulting interference.

Moreover, since there was no interference shown, NJ Retina could not have acted with malice as required to prove a tortious interference claim. "Whether the tort is denominated as an intentional interference with contractual advantage, or future economic advantage, the import is the same." Jenkins, 306 N.J. Super. at 265. Each claim requires as an element of proof that the interference was malicious. See DiMaria Constr., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001) (stating the elements of a claim for "[t]he tort

16

of interference with a business relation or contract"); Nostrame, 213 N.J. at 122 (stating the elements of a claim for tortious interference with prospective economic advantage). "[I]n any action based on tortious interference . . . [the] interference [must] be malicious." Kopp, Inc, 223 N.J. Super. at 559. Although these torts are separate causes of action, both have as their focus the means of interference. Nostrame, 213 N.J. at 121-22. To state a claim for either tort, plaintiff must show that the interfering acts were intentional and improper. Ibid.

Proof that a party acted only "'to advance [its] own interest and financial position' does not establish the necessary malice or wrongful conduct." Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003) (internal citations omitted). For example, when a business targets its competitor's customers, it exercises a valid business judgment and that alone does not constitute tortious interference with prospective economic advantage. Nostrame, 213 N.J. at 125. In order to establish malice, a plaintiff must demonstrate defendant's "conduct was [not] sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." Lamorte Burns, 167 N.J. at 306 (quoting Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J. Super. 140, 199 (App. Div. 1995)).

Significantly, an act that is done in the exercise of an equal or superior right cannot support a claim of tortious interference. A party's exercise of a right "constitute[s] ample justification for its action and cannot result in the imposition of tort liability." Kopp, Inc., 223 N.J. Super. at 560 (quoting Levin v. Kuhn Loeb & Co., 174 N.J. Super. 560, 574 (App. Div. 1980)). A "[w]rongful act connotes any act which will, in the ordinary course, infringe upon the rights of another to his damage, except and unless it be done in the exercise of an equal or superior right." Ibid. (alteration in original) (quoting Kurtz v. Oremland, 33 N.J. Super. 443, 455 (Ch. Div. 1954)).

Based upon our de novo review, we are satisfied plaintiffs failed to establish a prima facie case of tortious interference by NJ Retina. The record supports the conclusion that NJ Retina merely acted to advance its own economic interests in having discussions with Dr. Notis about potentially purchasing his business and nothing more. And, plaintiffs failed to show how NJ Retina caused them damages in any way. Thus, we are satisfied summary judgment was properly granted.

B.

There Are No Genuine Issues of Material Fact With
Respect to Each Element of Plaintiffs' Tortious Interference Claims

A-1468-23

Plaintiffs next argue dismissal was inappropriate because there were questions of disputed material fact and reasonable inferences supporting their tortious interference claim. To establish a claim for tortious interference with a prospective economic advantage, a "plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendant['s] malicious interference, and that it suffered losses thereby." Lamorte Burns, 167 N.J. at 305-06 (citation omitted).

To establish tortious interference with a contract, a plaintiff must prove: (1) an existing contract or reasonable expectation of economic advantage; (2) intentional and malicious interference with that relationship; (3) the loss of the contract or prospective gain as a result of the interference (causation); and (4) damages resulting from that interference. Velop, Inc., 301 N.J. Super. at 49 (citing Printing Mart-Morristown, 116 N.J. at 751-52). "Whether the tort is denominated as an intentional interference with contractual advantage, or future economic advantage, the import is the same." Jenkins, 306 N.J. Super. at 265. "[I]n any action based on tortious interference . . . [the] interference [must] be malicious." Kopp, Inc., 223 N.J. Super. at 559. Although these torts are separate causes of action, both have as their focus the means of interference. Nostrame, 213 N.J. at 121-22.

Here, it is undisputed plaintiffs had a reasonable expectation of an economic advantage in the de facto contract with Dr. Notis. However, the record is devoid of any facts or information to show NJ Retina had knowledge of such a reasonable expectation at the time the negotiations to purchase Dr. Notis's practices began. We focus our attention on whether plaintiffs established that NJ Retina intentionally inflicted harm on them without justification.

"Interference with a contract is intentional 'if the actor desires to bring it about or if he [or she] knows that the interference is certain or substantially certain to occur as a result of his action.'" Dello Russo, 358 N.J. Super. at 268 (quoting Restatement (Second) of Torts § 766A cmt. e (Am. L. Inst. 1977)). "[A]n intentional wrong can be shown not only by proving a subjective desire to injure, but also by a showing, based on all the facts and circumstances of the case, that the [actor] knew an injury was substantially certain to result." Laidlow v. Hariton Mach. Co., 170 N.J. 602, 614 (2002).

"'[T]he term malice is not used in the literal sense requiring ill will toward . . . plaintiff[,]'" instead, "malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." Printing Mart-Morristown, 116 N.J. at 751 (quoting Restatement (Second) of Torts ch. 37, intro. note (Am. L. Inst. 1979)); Dimaria Const., Inc., 351 N.J. Super. at 567 ("[M]alice is defined

to mean that the interference was inflicted intentionally and without justification or excuse."); see also Dello Russo, 358 N.J. Super. at 269. Malice is determined on an individualized basis, and the standard is flexible, viewing defendant's actions in the context of the facts presented. Ideal Dairy Farms, Inc., 282 N.J. Super. at 199.

Guided by these principles, and viewing the facts in the light most favorable to plaintiffs, we are convinced the record lacks competent evidence that NJ Retina intentionally or maliciously inflicted harm on plaintiffs by attempting to negotiate with Dr. Notis to buy his practices. Moreover, plaintiffs presented no evidence that NJ Retina's "interference" caused them any damages. Thus, the trial court did not err in finding no genuine issues of material fact from which a jury could conclude that plaintiffs established a prima facie case of tortious interference and summary judgment was properly granted.

### III.

Plaintiffs next argue that the trial court prematurely granted NJ Retina's cross-motion for summary judgment because discovery was incomplete and thereby deprived them of their due process rights. In that regard, plaintiffs argue they should be permitted to take depositions, cross-examine witnesses, and obtain outstanding paper discovery to "present the vital evidence needed to

demonstrate the malice and lack of justification behind NJ Retina's actions—elements central to their tortious interference claim."  We are unconvinced.

Appellate courts "defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law."  Est. of Lasiw by Lasiw v. Pereira, 475 N.J. Super. 378, 392 (App. Div. 2023) (quoting Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017)).  A trial court abuses its discretion when a "decision [is] 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J. 568, 588 (2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Summary judgment may be "inappropriate prior to the completion of discovery."  Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 541 (App. Div. 2019) (quoting Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)).  Summary judgment, however, can be granted where the non-moving party cannot "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action."  Ibid.  (quoting Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015)); see also Ellis v. Hilton United Methodist Church, 455 N.J. Super. 33,

22

41 (App. Div. 2018) (explaining that a party opposing summary judgment must "demonstrate with some specificity the discovery sought, and its materiality" (quoting In re Ocean Cnty. Comm'r of Registration, 379 N.J. Super. 461, 479 (App. Div. 2005))).

Plaintiffs have failed to demonstrate how further discovery would supply the missing elements of their tortious interference claim. Accordingly, the trial court did not err in granting summary judgment before discovery was complete. Indeed, plaintiffs were afforded an opportunity to conduct discovery and never established their tortious interference claim. The matter was ripe for summary judgment.

IV.

Finally, plaintiffs challenge the court's decision to assess sanctions based on their "bad faith" pursuit of claims without any legal or factual basis. Plaintiffs also assert the court did not adequately analyze the reasonableness of the fees under the lodestar or the RPC 1.5(a) factors.

We review a trial court's decision to award counsel fees on a motion for frivolous litigation sanctions under an abuse of discretion standard. Bove v. AkPharma Inc., 460 N.J. Super. 123, 146 (App. Div. 2019). "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions,

and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001). Abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg, 171 N.J. at 571. There may be an abuse of discretion "if the discretionary act was not premised upon a consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005).

The Frivolous Litigation Act governs sanctions for frivolous litigation against a party. Under that statute, a court is permitted to "award reasonable attorney's fees and litigation costs to a prevailing party in a civil action if the court finds 'at any time during the proceedings or upon judgment that a complaint . . . of the non-prevailing person was frivolous.'" Bove, 460 N.J. Super. at 147-48 (quoting N.J.S.A. 2A:15- 59.1(a)(1)).

A complaint is frivolous if the judge "find[s] on the basis of the pleadings, discovery, or the evidence presented" that either: (1) the complaint "was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury;" or (2) "[t]he non[-]prevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or

equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b)(1) to (2).

Similarly, Rule 1:4-8 provides a pleading is frivolous if: (1) it is "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" (2) the claims therein are not "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" (3) the factual allegations lack evidentiary support; or (4) the denials of factual allegations are not warranted. R. 1:4-8(a).

Applying these principles, we discern no abuse of discretion in the court's decision to award attorney's fees and costs to NJ Retina pursuant to Rule 1:4-8 and the Frivolous Litigation Act. Therefore, we affirm the February 4, 2022 order, which directed the sanctions were found only against plaintiffs and not their counsel. As the court observed, "once plaintiffs knew there was no deal," there was no "conceivable cause of action for intentional . . . interfering with a prospective economic opportunity" and "pursuing the litigation was frivolous." The court's findings on the issue of sanctions are supported by substantial credible evidence.

Moreover, the court considered all the relevant and appropriate factors under Rule 1:4-8 and the Frivolous Litigation Act. The unrefuted record shows plaintiffs were repeatedly informed by the court and NJ Retina's counsel about the absence of any factual basis to pursue claims against NJ Retina. Further, plaintiffs' decision to continue pursuing claims against NJ Retina—despite their knowledge that no transaction occurred between NJ Retina and Dr. Notis—constitutes bad faith. The record supports that determination.

However, plaintiffs' argument that the court did not provide an adequate explanation for awarding $72,984.95 has merit. The court described plaintiffs' conduct as violative of Rule 1:4-8(d) and the Frivolous Litigation Act but only stated it "looked over the certification, the hours are reasonable for the type of attorneys that are working [o]n the case in this area . . . [of] expertise" and are "entitled to at least 50[%] of the fees that they suffered in this case in defending . . . a frivolous cause of action against them."

When calculating the amount of reasonable attorney's fees, courts must determine the lodestar, defined as the "the number of hours reasonably expended multiplied by a reasonable hourly rate." Rendine v. Pantzer, 141 N.J. 292, 335 (1995). Factors that the court must consider when awarding attorney's fees include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; [and]

(8) whether the fee is fixed or contingent.

[Hansen v. Rite Aid Corp., 253 N.J. 191, 214 (2023) (quoting RPC 1.5(a)).]

The court may not include "excessive and unnecessary hours spent on the case in calculating the lodestar." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22 (2004). Therefore, the amount of the lodestar "may be reduced[.]" R.M. v. Supreme Court of N.J., 190 N.J. 1, 11 (2007). Moreover, if "the fee requested far exceeds the damages recovered, 'the trial court should consider the damages sought and the damages actually recovered.'" Litton Indus., Inc. v. IMO Indus.

Inc., 200 N.J. 372, 387 (2009) (quoting Packard-Bamberger, 167 N.J. at 446). Ultimately, the "goal is to approve a reasonable attorney's fee that is not excessive." Id. at 388.

Here, the court's decision lacks sufficient evidence to evaluate the specific award determination. See Litton Indus., Inc., 200 N.J. at 386 (citing Furst, 182 N.J. at 21) (holding that a court awarding attorney's fees must determine the "lodestar," defined as the "number of hours reasonably expended" by the attorney, "multiplied by a reasonable hourly rate"). Without an oral or written statement of reasons for the award and analysis of the factors in RPC 1.5(a), we lack the ability to substantively consider the propriety of the award and "are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Ibid. Thus, we reverse the $72,984.95 award and remand to the court for the appropriate Rule 1:4-8(d) and RPC 1.5(a) analyses.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1468-23